## William Woodbridge v. The City of Detroit.

The Charter of Detroit provides that the Common Council may cause the streets to be graded and paved, and assess the whole expense of such grading and paving in front of any particular lot, to the center of the street, upon such lot, and makes such assessment a lien upon the premises until paid, and also a personal charge against the owner, and authorizes a warrant for distress and sale of his goods for the same. Whether this provision is constitutional and valid, *quere? Held,* by MANNING J. and MARTIN CH. J. that it is: By CAMPBELL and CHRISTIANCY JJ., that it is not.

WOODBRIDGE *v.* THE CITY OF DETROIT.

MANNING J. held that the provisions in the Constitution with respect to taxation do not apply to assessments for local improvements; and valuation of the property taxed for such improvements is not a necessary element in the apportionment of the taxes. CHRISTIANCY J. concurred.'

2: That such assessments need not be co-extensive with the county, city or ward in which the improvement is made, and that the rule of apportionment, by valuation of property or otherwise, is for the Legislature to determine. CHRISTIANCY J. concurred substantially, though differing as to what is apportionment.

3: That there is nothing in the power of taxation itself requiring a tax to be apportioned in any particular way, and that the rule by which the amount of tax to be paid by each tax-payer is to be determined—which is all that is meant by apportioning a tax, when applied to him—cannot be made a test of the taxing power.

4: That the provision in question is valid as the exercise of the power of taxation, and in no sense an exercise ,of the right of eminent domain. There are here all the characteristics of a tax: A public burden imposed by law; a description of the property and persons by whom it is to be borne; the contingency on the happening of which it is to be imposed, and the apportionment of it in pursuance of law. The demand of each person is not made without reference to the amount contributed by others, but the aggregate cost of the whole work is apportioned among the several lot owners in proportion to the work done in front of their respective lots.

MARTIN Ch. J. concurred in all respects with MANNING J.

CHRISTIANCY J. held, that to constitute a tax or assessment, or an exercise of the power of taxation, there must be a common public burden within some particular district, which burden must be apportioned by some rule of apportionment, by which the amount paid by one person or piece of property shall bear some relation to, or be affected by, the amount paid by another: that there is here no public or common burden within the district to be imposed, and consequently no apportionment. It is a private individual burden, imposed for a public purpose; each lot or tract, and the owner, being charged in gross with the entire expense of the improvement in front of it, without any reference to the amount to be paid by any other lot or tract, and the amount paid by one having no relation to, nor being increased or diminished by, that paid by another.

2: That this burden is, therefore, not a tax, nor an assessment; nor is the mode of apportioning it an exercise of the taxing power; that it rests entirely upon the idea of a duty on the part of the owner, to make the improvement in front of his lot; in this respect resembling a police regulation; but that it cannot be justified as the exercise of the police power, because *first* the idea of a duty is not carried out—the owner not being allowed to make the improvement—and, *secondly,* because the raising of money for the grading and paving of streets is not a subject for the exercise of the police power, but falls directly within the exercise of the taxing power.

3: That the proceeding authorized by the charter takes private property for a public improvement, without compensation, and in a mode not authorized by the Constitution.

4: That when property is taken in payment of a tax or assessment, the law presumes compensation in the proper application and expenditure of the tax; but when taken without any reference to the amount contributed by any other persons or property, it is an arbitrary, forced contribution, and there is no such presumption.

CAMPBELL J. concurred with CHRISTIANCY J. in his reasoning as to the illegal character of this system of charges upon property and its owners. He also held

WOODBRIDGE v. THE CITY OF DETROIT.

that the Legislature could not vest in the city authorities the power to make improvements, and charge the expense upon individuals on the idea of private benefits conferred.

2: But that if it could, this provision of the charter is not valid, since it makes no provision for ascertaining such benefits. The Legislature can not arbitrarily determine that any lot is benefited by the precise cost of an improvement in front of it, and that no other lot is benefited at all.

3: That the clauses in the Constitution requiring taxation to be by uniform rules, are applicable to the case of taxes or assessments for local improvements of this character; that they must be assessed upon some uniform standard, either of value or something else, which will afford a means of comparison; and that while there is no restriction upon the Legislature in defining the size of the districts within which the apportionment of the burden is to be made, single lots, made chargeable, as in this case, without any reference to size or extent, are not districts, and there is no room for apportionment or uniformity.

*Heard January 4th. Decided June 1st.*

Case reserved from Wayne Circuit in Chancery.

The bill was filed against the city of Detroit, and William Cook, city collector, to restrain the collection of a tax assessed for the grading and paving of a part of Fort street.

The bill shows that, in 1859, the Common Council of Detroit passed an ordinance directing the paving and grading of Fort street, and the placing of curb stones along the same, through a portion of complainant's land lying upon the same, and for a short distance above: That for fifty feet front of this improvement, the land of Lucy Maria Abbott was assessed $132 60, and for the remainder, being 810 feet front on the westerly side, and 860 feet front on the easterly side, the land of complainant was assessed $4,436 80: That the Common Council have issued their warrant for the collection of this assessment, and in default of complainant paying the same he is liable to have his goods and chattels seized for the satisfaction thereof: That he has not goods and chattels sufficient to satisfy the same, and the Council will proceed to sell the lands assessed therefor if the goods and chattels prove insufficient: That the assessment constitutes a cloud upon his title: That the paving, &c. has been done, but without his assent and against his remonstrance

and that the provision of law authorizing such assessment is unconstitutional.

A temporary injunction having been granted, defendants moved to dissolve the same, and on such motion the Circuit Judge reserved the constitutional question raised by the bill for the opinion of this court.

*T. Romeyn,* for complainant.

1. The remedy by injunction is proper:—*LeFever v. Detroit,* 2 *Mich.* 587; *Caroll v. Safford,* 3 *How.* 441, 463; *Burnett v. Cincinnati,* 3 *Ohio,* 86; *Ohio State Bank v. Knoop,* 16 *How.* 369; *Dodge v. Woolsey,* 18 *How.* 331, 339, 340.

2. The paving of the street, like the first taking of its soil, is for the *use* of the public. To sequestrate a citizen's property for this purpose is, in fact and in principle, to take it for the public use. And as no compensation is provided, either by estimated benefits or otherwise, such taking is unconstitutional:—See 11 *Johns.* 77; 3 *Wend.* 263; 4 *Hill,* 76; 6 *Barb.* 214; 9 *Barb.* 535; *Ang. on Highways,* 144 *to* 165.

There is nothing in the principles of taxation, nor in the adjudications in other states, sustaining and justifying this proceeding:—*Ang. on Highways,* *Ch.* 4; *People v. Mayor of Brooklyn,* 4 *N. Y.* 419.

*J. L. Chipman,* and *G. V. N. Lothrop,* for defendants:

The assessment in this case is necessarily based on the idea of a benefit to the property assessed. The law itself implies that the courts have always so treated it:— 11 *Johns.* 77; 4 *Hill,* 82. And hence though it is true as charged in the bill that the assessment is not made on an estimate of the value of the lots, or of their enhanced value, or of the resulting benefits, yet it is no less true, that the assessment rests on the ground of local benefit or improvement to the lots by reason of the paving. And

no averments of the bill can negative this fundamental idea of the law.

Paving is, or may be, a local improvement. It is authorized to be done upon that ground. The law properly vests the determination of the question when it will be such improvement in the Common Council. And their decision on this question, when there is a question, is not the subject of judicial review:— 23 *Barb.* 166.

Local assessments like these in principle, have been upheld generally:— See 19 *Ohio*, 418; 1 *O. S. R.* 127; 5 *O. S. R.* 243; 6 *Humph.* 371; 1 *Swan*, 177; 6 *Cush.* 223; 4 *Comst.* 420; 23 *Barb.* 166; 2 *Mich.* 568.

There is another objection to this injunction. The bill does not show that there is any process now on foot, except for the collection of this tax out of complainants chattels. The sale of the land is only a remote and contingent liability, for which no proceedings have yet been taken. The real gist of the bill is to prevent our taking complainant's goods and chattels, which, on the supposition that the assessment is illegal, would be merely to prevent a trespass to personal property. But the court will not ordinarily interfere by injunction to restrain a mere trespass, nor ordinarily to restrain the collection of an illegal tax out of goods and chattels; and generally will not restrain the collection of taxes and assessments except on strong and clear equities:— 6 *Johns. Ch.* 29; 26 *Wend.* 135; 10 *Paige,* 539; 9 *Paige,* 387; 4 *Barb.* 9; *Ibid.* 17; 15 *Barb.* 255; *Ibid.* 385; 26 *Barb.* 301; 3 *Ohio,* 370; 3 *O. S. R.* 36, 49; 25 *Conn.* 232; 2 *Mich.* 582.

Besides, the paving is all done, and of course the whole expense incurred. During the whole period of this expenditure the complainant lies by, and moves only when the collector comes around with his roll. But a party who asks an injunction to prevent an alleged injury, must act promptly. He will not be aided if he lies by while large expenditures are made:— 18 *Ves.* 515; *Walk. Ch.* 249; 22

WOODBRIDGE *v.* THE CITY OF DETROIT.

*Me.* 207; 2 *Rand.* 99; *Saxton,* 518; 10 *Cush.* 252; 6 *O. S. R.* 119.

MANNING J.:

I can not see that the present case differs essentially from *Williams v. The Mayor of Detroit,* 2 *Mich.* 560. The city charter then in existence contained the following clause: "And the Common Council shall have full power and authority to provide funds for defraying the expenses of such paving of streets or sidewalks as may be deemed necessary, either by assessment on the owner or occupant of such lot or premises, in front of or adjacent to which such streets or sidewalks may be directed to be paved or repaired, or otherwise, as they may direct." And it was provided by a city ordinance that, "Whenever the Common Council of said city shall deem it necessary to provide funds necessary for defraying the expenses of grading, paving, or planking any alley, avenue, or street of said city, or any portion thereof, they shall cause an assessment to be made by the city surveyor on the owners or occupants of the lots or premises in front of or adjacent to the avenue or street directed to be graded, paved, or planked." And it appears from the opinion of the court that the aggregate cost of the pavement was "apportioned according to the width of each lot fronting on the street paved."

The assessment was held to be a tax, and not the taking of private property for public use.

The only difference between that case and the present is, that the revised charter requires the cost of paving and grading to be assessed "on the owner of the lot or premises in front of or adjacent to which" the paving and grading are done. In Williams' case the cost of the paving and grading was apportioned between the owners of the lots by the number of feet frontage each lot bore to the frontage of all the lots contiguous to the pave-

ment. If the street in front of some of the lots had to be cut down, and in front of others to be filled up to bring it to the grade of the pavement, the expense was assessed on all the lots in proportion to their several frontage on the street. In the present case a different principle of apportioning the expense was adopted, to comply with the revised charter, which requires the owner of each lot to pay for the grading as well as paving in front of his lot. The thing is not impracticable. The work is done by contract; and to carry out the new rule of apportioning the aggregate cost of the whole work, the different parts of it should be, and I presume are, contracted at different prices — the paving at one price and the grading at another. Men will differ as to which of these two modes of apportioning the expense is most just and equitable. The difference, it seems to me, is not of such a nature that one can be a tax and the other not.

Judge Ruggles, in the case of *The People v. Mayor of Brooklyn*, 4, *Comst.* 423, says: "Taxation exacts money or services from individuals, as and for their respective shares of contributions to any public burthen."

"Private property taken for public use by right of eminent domain, is taken not as the owner's share of contribution to a public burthen, but as so much beyond his share."

"Special compensation is therefore to be made in the latter case, because the government is a debtor for the property so taken; but not in the former, because the payment of taxes is a duty, and creates no obligation to pay, otherwise than in the proper application of the tax."

"Taxation operates upon a community or upon a class of persons in a community, and by some rule of apportionment.

"The exercise of the right of eminent domain operates upon an individual, and without reference to the amount or value exacted from any other individual or class of individuals."

WOODBRIDGE *v.* THE CITY OF DETROIT.

I know of no case in which the distinction, with the reasons for it, between taking property by taxation and by the right of eminent domain, is more clearly pointed out; and I find no difficulty in sustaining the assessment in the present case on the principles stated by the learned judge.

Article 14 of the Constitution contains the following sections relative to taxation:

" SEC. 11. The Legislature shall provide an uniform rule of taxation, except on property paying specific taxes; and taxes shall be levied on such property as shall be prescribed by law.

" SEC. 12. All assessments hereafter authorized shall be on property at its cash value.

"SEC. 13. The Legislature shall provide for an equalization by a state board, in the year one thousand eight hundred and fifty - one, and every fifth year thereafter, of assessments on all taxable property, except that paying specific taxes."

Taking the three sections together, there seems to be no reason to doubt the taxes here referred to are the ordinary taxes raised for state, county, township and municipal government. The word " assessments" in the 12th and 13th sections, does not mean taxes in any sense, but the valuation of property for the purpose of raising the taxes referred to in the 11th section.

Taxes for purely local public improvements, like the one before us, more generally called assessments, are not mentioned in the Constitution, nor is it necessary they should be to give the Legislature power over them. The power to impose and collect such taxes, like all other legislative powers not mentioned in the Constitution, is plenary, and in the exercise of it is subject to legislative discretion only.

As this description of taxes does not come within the sections of the Constitution mentioned, valuation in the property taxed is not a necessary element in the apportionment of the tax. The apportionment of it may be based on valua-

8 MICH.— T

tion or not. This is for the Legislature to determine, which alone has power to prescribe the rule of apportionment. And as there is nothing in the power of taxation itself requiring a tax to be apportioned in any particular way, the rule by which the amount of tax to be paid by each taxpayer is to be determined (which is all that is meant by apportioning a tax when applied to him) can not be made a test of the taxing power.

But the Constitution provides, "Private property shall not be taken for public improvements in cities and villages without the consent of the owner, unless the compensation therefor shall first be determined by a jury of freeholders, and actually paid or secured in the manner provided by law." Art. 15, § 15.

The taking here referred to is the taking of private property by right of eminent domain, which can not be done by the city of Detroit except in the manner stated.

Admitting money can be taken in this way, is the attempt made to take it in the present instance by right of the taxing power, or by right of eminent domain? If the former, the city is entitled to it; if the latter, it is not, because it has not taken the requisite steps to perfect its right.

In the case before us we have all the characteristics of a tax, and not a solitary characteristic of the exercise of the right of eminent domain.

The money is demanded as complainant's apportionment or share of the cost of paving a part of Fort street, on which he and others have lots fronting on the part of the street paved; and the law imposes on him and them the cost of the paving as a public burden, and prescribes the rule by which that burden shall be borne by them respectively.

Here, then, we have all the characteristics of a tax: A public burden imposed by law, a description of the property and persons by whom it is to be borne, the

contingency on the happening of which it is to be imposed, and the apportionment of it in pursuance of law. With all of these characteristics of a tax, there is not a solitary characteristic of a taking of property by right of eminent domain. The warrant of the collector does not demand property of complainant only, but of him and others; nor does it demand property of him only, for public use, for it at the same time, makes a like demand of others for the same use. Nor is the demand made on him uncertain in amount, or made without reference to the amount to be contributed by others. The aggregate cost of the whole work is apportioned among the several lot owners, in proportion to the work done in front of their respective lots.

If the case before us is not an attempt to take private property for public use, without making compensation as required by the Constitution, it is most clearly a tax, and as such, subject to no rules but legislative discretion. In the case of *The People v. Mayor of Brooklyn*, Judge Ruggles says it is the duty of the Legislature "to prescribe the rules on which taxation is to be apportioned," and that its determination, "being within the scope of its lawful authority, is conclusive." And in *Brewster v. City of Syracuse*, 19 *N. Y.* 116, in which the constitutionality of the power was again before the same court, Johnson Ch. J., in delivering the opinion of the court, says: "The nature of this power was fully examined in *The People v. Mayor of Brooklyn*, 4 *Comst.* 419, and it was declared to be a part of the legitimate exercise of the state's power of taxation, to ascertain, subject to no judicial review, the public burdens to be borne and the persons or class of persons who were to bear them. It would, therefore, have been within the clear authority of the Legislature to have authorized the city government of Syracuse, without the consent of any person specially interested, to construct this sewer, and to assess, by way of tax, the expenses on

such persons as ought, in the judgment of the Legislature, to bear the burthen."

It is quite evident, from the large number of cases to be found in the books of reports of the several states, that courts have experienced much difficulty in supporting this kind of legislation; and yet in almost every instance it has been sustained. The difficulty, it would seem, has generally been in determining the assessment to be a tax, because of the supposed injustice or inequality of the assessment by reason of its not being co-extensive, as in case of ordinary taxes, with some one of the civil divisions into which the state is divided for governmental purposes; that is, on all the taxable property of the county, township, city, or ward, in which the improvement is made.

When the consequences of a statute are not subversive of the very end and object of a constitutional government, they can not, — if the Constitution itself contains no inhibition, and if it does there is no occasion to resort to them, — be made the basis for declaring the law unconstitutional. In construing a statute the case is different, for the reason that they are not used to overturn the law, but to give a reasonable interpretation to the intention of the Legislature, and the language of the statute when it it is susceptible of more than one meaning. But to go beyond this, and give them the effect of annulling a statute, would be an assumption of legislative functions.

The supposed hardship in many if not most cases, it seems to me, is more imaginary than real. Things with which we are not familiar not unfrequently, at first view, meet with condemnation, although undeserving of it, while those with which we are familiar, and that really deserve condemnation, are looked upon as right in themselves. A law requiring the owner of a lot of ground in a dense and populous city, for the accommodation of the people and vehicles that throng its streets, to pave the street in front of his lot, and his neighbor to do the same thing,

is looked upon by many as unjust and inequitable. Now, we have a statute requiring a specific tax of four per cent. to be paid on all ores, with the exception of iron ore, which pays but two per cent. Why this difference between iron and other ores? Why are not all ores taxed alike? And why is the miner required to contribute to the public the one twenty-fifth or one fiftieth part of the product of his mine, as the case may be, while no such tax is imposed on the products of the farmer? Again, a pedler on foot is required to pay a specific tax of $10 a year; if he uses a horse in his business, $25, and if two horses and a vehicle, $50. Why this difference? Is it that he who goes best prepared to accommodate his customers must pay most? But why is he required to pay a tax at all? Is it because, as a vender of goods, or traveling merchant, he goes to his customers instead of requiring them to come to him? If we were not accustomed to such and the like taxes, and they were now for the first time about to be introduced, we have no doubt we should hear much of their injustice and unconstitutionality. They differ, however, from the tax before us, in this, that while the exigency, the growth of a large city, that renders pavements necessary, at the same time increases the value of the lot on which the burden is imposed ten, twenty, or, perhaps, fifty times the amount of that burden, nothing of the kind exists in the case of the miner, whose ores are not more valuable by reason of the public exigency that stands in need of his money.

For all ordinary purposes of government, the Constitution makes it the duty of the Legislature "to provide a uniform rule of taxation, except on property paying a specific tax," &c. And this uniform rule of taxation is to operate on property assessed at its cash value. But the Constitution has never been understood as requiring the rule to be so framed as to make each piece of property of the same value, throughout the state, pay the same amount of tax. Such

a rule would be uniform, but it has not been adopted. The taxable property of the whole state is taxed to pay state expenses, and that in the counties only to pay county expenses, and in townships to pay township expenses. All of these expenses pertain to the administration of the government, but each piece of property of the same value, in every part of the state, does not pay the same amount of tax — the equality and uniformity of the rule of taxation consisting in requiring each county and township to pay its own expenses. These expenses are not probably the same in any two counties or townships in the state, and it is not likely that a $1,000 worth of property in any two townships in the state contributes the same amount in any one year for the support of government. We hear of no complaint, in all this, of inequality, or of a want of uniformity in the rule of taxation. Each county and township is required to pay its own expenses, because it is more directly interested in, and benefited by, such expenses than other counties or townships, or the state at large.

This rule of taxation, it seems to me, is analogous to the one by which the cost of the paving is apportioned in the present case; and that, to make the analogy complete, it is only necessary to suppose the counties and townships to be individuals instead of political corporations. The reason of the rule is the same in both, and its justice as obvious in one case as in the other.

The current of authorities is, that assessments for local improvements need not be co-extensive with the county, city, or ward in which the improvement is made; and this, it seems to me, removes the only obstacle in fact to this species of taxation, that courts have had to encounter where the state Constitution was silent on the subject.

To show the state of the law at different times in the state of Kentucky, I will refer to two decisions made by the Court of Appeals of that state. In *Suttons's Heirs*

*v. City of Louisville*, 5 *Dana*, 28, it was held the expenses of a local improvement must be borne by the whole city, and not by the property more directly benefited by it. This case was, in effect, afterwards overruled by the same court, in *The City of Lexington v. McQuellan's Heirs*, 9 *Dana*, 513, Ch. J. Robertson giving the opinion of the court in both cases. The charter of the city of Lexington authorized streets to be paved or turnpiked "at the cost and expense of the lot owners fronting such street or alley." A cross street, extending the length of a block, was graded and macadamized. A deep cut was made opposite the lot owned by McQuellan's heirs, and the expense of making it was assessed on their lot, and not on all of the lots on both sides of the street. The court sustained the constitutionality of the charter authorizing an assessment, on the ground that, for the purpose of making such improvements, the charter might be considered as making each block a separate municipality. But as the charter required the expense of grading to be borne by all the lots, the decree of the court below enjoining the collection of the assessment was reversed, as the city should have been enjoined against collecting the excess of the assessment only. Had the charter authorized the expense of the grading to be assessed on the lot in front of which it was done, the charter would still, I think, have been sustained by the court; for, in speaking of the city at large, — and the remark was strictly applicable to the block where the improvement had been made, and the attention of the court was called to the point by the assessment before them, — they say: "And if all those ways should be reconstructed or repaved during the same fiscal year, we are not prepared to question the public authority to require each of the owners of grounds on the streets respectively, to pay one-half of the cost of the improvement made opposite to his lot."

I think the questions reserved for the opinion of this court should be answered in the affirmative.

MARTIN CH. J.:

I concur fully in the views of my brother Manning.

CAMPBELL J.:

The principal question to be decided in this case is, whether the provisions of the charter of Detroit, author- izing the expense of grading and paving streets to be collected against the owners of land abutting on the streets are valid.

These provisions are somewhat different from any which have been passed upon in other states, so far as my observation has gone. The taxes are not distributed through any district, larger or smaller, upon any given ratio, but each lot is chargeable with the whole expense of grading and paving in front of it, and not with an aliquot portion of the grading and paving of a block or district. By § 8 of Ch. 8 of the Revised Charter (L. 1859, p. 132) the Council are authorized " to levy, assess, and collect a tax or assessment on all lots, premises, or subdivisions thereof, sufficient to defray the expenses of grading and paving, graveling, macadamizing, or planking any highway, avenue, street, lane, alley, or crosswalk in said city, in front of or adjacent to such lots, premises, or subdivisions thereof, and of putting curb-stones or " culverts therein; which tax or assessment shall be credited to the street paving fund." A similar provision occurs in subdivision 11 of section 21, in chapter 5 (L. 1859, p. 96) which, however, provides further for street crossings not opposite any lot, and for interior public spaces, and al- lows the Council to apportion the expenses of improving these at its discretion, and without any rule, upon the ad- jacent block. Where such paving is at the intersection of streets adjacent to the point of a triangular block, the Council are authorized to assess against the whole city so much as they deem just.

There is, then, no provision which divides the cost of

an improvement as a whole upon property or persons by any rule of proportion whatever. Two lots side by side contribute alike when the surface is uniform, but not otherwise. And for those taxes which are distributable through a block, there is no rule of apportionment prescribed, the Council being left to a full discretion.

The first question that arises is, under what division of powers is this exercise of authority to be classed? It was held by the former Supreme Court, in *Williams v. The Mayor, &c., of Detroit,* 2 *Mich.* 560, that these expenditures and charges could only be justified under the taxing power, as the imposition of burdens for public purposes. Such is the course of modern decisions; and if it be not an exercise of the taxing power, it is not easy to find any basis for it to rest upon.

Assuming this, if valid at all, to be an exercise of the power of taxation, it is claimed that the law must be governed by one or both of two constitutional provisions, which are as follows:

Art. 14, sec. 11. "The Legislature shall provide an uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law."

Sec. 12. "All assessments hereafter authorized shall be on property at its cash value."

Street improvements have been made the subject of much judicial discussion, and we have been referred to a number of decisions which have a bearing to some extent upon the case before us. The grounds on which they have been attacked or sustained vary, and it may be useful to refer to some of the distinctions.

In New York it has long been customary to apportion the expense of such improvements upon property benefited, in proportion to the amount of benefit in each instance. These benefits are ascertained by some competent board of assessors, who are governed by no arbitra-

ry rule. After fluctuating a long time among various reasons, the Court of Appeals, in *The People v. The Mayor, &c., of Brooklyn,* 4 *Comst.* 419, settled down upon the taxing power as the one resorted to. But, inasmuch as it could not be reconciled with the idea of general taxation, because not apportioned within any specific district ascertained by law, a distinction was taken between ordinary taxation, which it was admitted must be uniform, and "*assessments*" for local purposes, which it was held were, so far as the district of apportionment was concerned, subject to no rule but legislative discretion. The right to make the distinction was based upon a constitutional provision, which expressly recognized "assessments" in municipal corporations as distinct from taxes.

In Ohio the right was sustained of assessing the improvement on the property benefitted, in *Scovill v. Cleveland,* 1 *O. S. R.* 126. And in this case, as well as in *Hill v. Higdon,* 5 *O. S. R.* 243, where the whole assessment was divided ratably upon the premises within the range of the improvement by their frontage, the right to make such assessments was based expressly upon a provision in the Constitution borrowed from and identical with the one which was relied on in the case of *The People v. The Mayor, &c,, of Brooklyn,* in New York. In Illinois the assessments have been maintained on the ground of benefits to the property.

There are some cases where the decisions have applied to building or clearing sidewalks, which have been placed on different grounds. In *Bonsall v. Lebanon,* 19 *Ohio,* 418, the assessment by frontage seems to have been upheld on the ground that the duty was general throughout the town, and therefore the tax uniform. As there was no grading, this would be substantially true. The case, however, is not reasoned fully. In Massachusetts an ordinance for cleaning sidewalks is plainly to be referred to the police power:— *Goddard's case,* 16 *Pick.,* 504. And

it appears that the charges for sidewalks do not all fall upon the property owners, but in part upon the cities, and also that, after requiring one to be built, a second cannot be required, but the public must maintain them. *Lowell v. Hadley*, 8 *Met.* 191; *Lowell v. French*, 6 *Cush.* 223. In *Mayor v. Mayberry*, 6 *Humph*, 371, the right to require sidewalks is based on the right to remove nuisances — a foundation the propriety of which is not very apparent. In *Washington v. Nashville*, 1 *Swan*, 177, the right of the public is laid down as absolute.

If the right to make improvements and charge them to property owners is to be based upon the idea of private benefits created, I am entirely clear that no such power is maintainable. No principle is better settled than that private property cannot be taken by the government for private use, and it is equally clear on principle, that taxation in general can only be justifiable for public purposes, affecting large or small localities. The improvement of private property is no part of the objects of government. Unless a work is needed by the public, the public have no right to make it, and if needed, no individual should be compelled to pay except as a proportionate share of a public burden. The very distinction between taxation and the taking of private property is laid down in express terms by the court of New York, in *People v. Mayor of Brooklyn*, to be, that in the former the individual contributes only his share to a public burden, while in the latter he contributes beyond his share, and is entitled therefore to a compensation for the excess. This distinction is quoted with approbation by the Ohio courts from the language used in New York. I am unable to see how, under such a distinction, that can be regarded as a legitimate exercise of the taxing power which requires more than a proportionate share to be contributed. It does not follow, because the power is not that of taking property for public use,

that it is the taxing power. It may be neither, and illegal and arbitrary for the very reason that it is neither.

In Louisiana, in the case of *Municipality No. 2 v. White*, 9 *La. Ann. R.*, 446, under a constitution which contains the same terms with the two sections of our own already cited, it was held that the doctrine of benefits was inadmissable, and that these improvements must be made by a general *ad valorem* tax within some fixed district. In *Sutton's Heirs v. City of Louisville*, 5 *Dana*, 28, it was held that benefits could not be regarded And in *City of Lexington v. McQuillan's Heirs*, 9 *Dana*, 513, it was held that, within the paving districts created by the statute, the expenses of paving and grading must be ratably distributed upon some uniform system of distribution, and, accordingly, an assessment which charged against one lot the expense of paving and grading in front of it, was held void, because the work should have been apportioned as an entirety. In *Weeks v. City of Milwaukee*, lately decided by the Supreme Court of Wisconsin, a special assessment was held valid only because the constitution of that state had adopted the precise language used in the New York Constitution, distinguishing between assessments and general taxation; the court declaring expressly that, if that phrase had not been found, they would have had no difficulty in declaring the act void.

When we consider the fluctuations in New York, and also the fact that the benefit system is there an ancient one, reaching back to the early days of the colony, we may very fairly doubt whether it would have been recognized or created in modern times had it not been found already in existence. No court has yet succeeded in laying down any reasons which vindicate it as in any sense within the taxing power. And in that state it originated under the ordinary application of the right of eminent domain — in which, however, on principle it has but little better foundation.

In the case of *Williams v. Mayor, &c., of Detroit,* 2 *Mich.* 560, our own Supreme Court, while not deciding the point, intimated very strongly that benefits were not properly to be regarded in these cases (*p.* 572). And the tax in that case was sustained on the express ground that it was apportioned through a district. It was held that the present Constitution did not govern, because the law was prior to it, and therefore the question involved here did not arise.

In examining our present Constitution, it will be found that while we have adopted the section of the New York Constitution in which the courts of New York, Ohio and Wisconsin, have found their only authority for discretionary assessments as different from taxes, we have, in adopting it, striken out the very language on which all of those courts rely for the distinction:— *Sec.* 13 *of art.* 15, *Const. of* 1850. This being so, the argument, so far as it rests upon that foundation, is of no force here, and must be maintained upon other reasons if at all. But without this clause, it is not sustained upon most of the authorities cited.

Assuming, however, that benefits may be properly regarded, the law before us contains no provision for ascertaining them. The Legislature certainly cannot determine that any lot is benefitted by the precise value of an improvement in front of it, and that no other lot is benefitted at all. In New York, in the case cited, the benefits were ascertained as a matter requiring the use of judgment and discretion by a competent board or officer, very much as property is assessed in other cases.— So it was also in *Scoville v. Cleveland.* Under our statute, the matter is entirely arbitrary, and there is no uniformity whatever. The city may grade and pave in front of a single lot at a time, and the cost against one fifty-foot lot may be double that against the next one, if the ground is uneven. The law does not define what is meant

by "adjacent" property, or how far it shall be allowed
to be reached. The law does not provide how large a
lot or block shall be, nor determine any limit of extent
as coming within a taxing lien. A lot fifty feet wide by
one hundred deep may stand beside a tract three miles
deep, as this very case exemplifies, and the law does not
provide any means of distinguishing between them. A
lien for fifty dollars may in one case be confined to a
lot of small value, and in the other encumber the title
of a large estate. And if a parcel of land extend on a
paved street with a depth of but a few feet, the law
points out no way of holding the rest of the block, which
must necessarily be benefited in some degree at least by
the improvement. This law cannot, upon the most liberal
construction, be held to rest upon the basis of compelling
the parties or premises benefited to bear the burden.

The principle of uniformity, which our Constitution re-
quires, is really no new requirement, but in some way en-
ters into every proper tax, and is recognized in all the de-
cisions upon assessments as well as taxes, as essential to the
validity of all these charges. And where it is sought to
require each party benefited to contribute according to the
amount of his benefit, the ratio is intelligible and just, if
he should be compelled to pay on the basis of private ben-
efits at all.

And there is no restriction upon the Legislature in defin-
ing the size of districts. Our road districts are instances of
this. And if a charge is made on a uniform rule within any
prescribed district, there can be no very good reason for ob-
jecting to it because the district is large or small, if the
rest of the city is made to bear its own local burdens on a
substantially similar basis. But single lots, if all are made
chargeable without any reference to size or extent, are not
districts, nor is there any room for apportionment or uni-
formity. The very term taxation, whether used in a con-
constitution or elsewhere, signifies a proportioned charge,

upon some uniform standard, either of value or something else, which will afford a means of comparison.

I can see no reason why the clause of our Constitution requiring taxes to be by uniform rules does not apply to this case. Neither do I myself perceive why the rule of valuation should not be held to be intended to apply, as it certainly does apply literally, to the same thing. If there were any reason why a valuation tax for local purposes would not operate as justly as any other, there might be reason for endeavoring to find another construction. But the whole controversy upon this subject has shown that the valuation rule has advantages in most cases over any other and in assessing benefits it is undoubtedly followed to a considerable extent. The only decision which we find any where, upon a constitution requiring taxes to be upon a valuation, applies the requirement to these assessments:— *Municipality No. 2 v. White*, 9 *La. Ann. R.*, above cited. It affords a nearer approach to uniformity than any other, and it is this very quality that has caused its adoption for general taxation, and the power of exemption affords very full room for correcting its defects, where certain classes of property or improvements should be spared, in whole or in part.

So far as the Constitution is supposed to confer or authorize the conferring of powers of local legislation and management upon cities and counties, those powers must be construed and measured in view of the whole instrument.— There are many clauses which limit and control this authority. It cannot be supposed that the Legislature is permitted to create in our midst a number of irresponsible and unchecked municipalities, whose citizens are to be withdrawn from the protection of the general laws of the land. Whatever powers can be granted to cities, they certainly can not exceed those to be exercised by the Legislature that creates them.

I agree entirely with the views expressed by my

brother Christiancy in the reasoning by which he has demonstrated the illegal character of this spurious system of charges on property and its owners. And irrespective of the views I have expressed, as my individual opinion, upon benefits as a foundation for assessments, and upon the express clauses of the Constitution referred to, I concur with him that the taxing power, in whatever shape it is exercised, must be exercised with some regard to a distribution of burdens, and not arbitrarily. For the reasons I have given, and also for those which he has elaborated, I concur with him in regarding the provisions of the charter in question as invalid.

CHRISTIANCY J.:

The eighth section of chapter eight of the revised charter of the city of Detroit (L. of 1857, p. 132) purports to give the Common Council power to "levy, assess, and collect a tax or assessment on all lots, premises, or subdivisions thereof, sufficient to defray the expenses of grading and paving any street, lane, alley, &c., in front of, or adjacent to, such lots, premises, or subdivisions thereof, and of putting curb-stones and culverts therein;" the term "adjacent" being here obviously used in reference to alleys and not to streets.

By the fourteenth section of the ninth chapter, such tax or assessment is made a lien upon the premises till paid, and the collector is also authorized to ;collect the same of the person taxed, by distress and sale of his goods and chattels.

By reference to the eleventh subdivision of the twenty-first section of chapter five (L. of 1857, p. 96), in connection with the eighth section of chapter eight, above referred to, it is evident that there is to be no apportionment of the expenses among the owners of the various lots along the street to be paved, but the whole expense of the grading and paving in front of any particular lot,

to the centre of the street (whatever may be its amount, and without any reference to the amount paid by any other lot), is imposed, in gross, upon the lot.

Under these provisions, and without the assent of complainant, the Council levied what the charter assumes to call "a tax or assessment, on the lands of the complainant," for the grading and paving of Fort street, which passes through the complainant's farm, to the full amount of the expense of such grading and paving; and have issued their warrant to the collector for the collection of the amount (between four and five thousand dollars) from the goods and chattels of the complainant. The complainant has not goods and chattels sufficient to pay the amount.

Have the Legislature, in authorizing this mode of raising the funds for this improvement, exceeded their constitutional power? This is the only question in the cause; for, if the act is, in this respect, unconstitutional, the case, I think, sufficiently shows a constitutional right of the complainant about to be violated in the proceeding complained of, not merely by the seizure and sale of his goods and chattels, but by casting a cloud upon the title of his real estate.

I shall not here enter upon the discussion of the general nature of state constitutions and legislative power: but, for my own views of these general principles, I shall here only refer to my opinion given in the case of *Sears v. Cotterell*, 5 *Mich.* 256. To the views there expressed I still adhere.

I am not, therefore, to inquire whether the power in question has been granted, but whether it has been prohibited, by the Constitution; and, unless I shall be able clearly to see that some certain provision of the Constitution has been violated, I shall be compelled to uphold the constitutionality of the law, whatever I may think of its expediency.

If, as is claimed by the complainant, this be such "tax

8 Mich—U

or assessment" as is contemplated by the eleventh and twelfth sections of the fourteenth article of the Constitution, it is clearly void, as it is neither assessed by any uniform rule, nor on property at its cash value. These sections are as follows:

"SEC. 11. The Legislature shall provide an uniform rule of taxation, except on property paying specific taxes; and taxes shall be levied on such property as shall be prescribed by law.

"SEC. 12. All assessments hereafter authorized shall be on property at its cash value."

I do not think these provisions were intended to apply to taxes or assessments for such local improvements in cities and villages. It is certain that these provisions have relation to taxation for raising the general revenue for state, county, and township (and probably city) purposes, whether they have any greater extent or not. The "assessments" mentioned in the twelfth section can not be construed in the sense of a special tax, or sum of money raised for local purposes, as contra-distinguished from general taxes, but in the sense of ascertaining the value of property, as a prerequisite to the imposition of a tax. If this be not so, then there is nothing in the Constitution which requires the assessment of general taxes to be "on property at its cash value."

The distinction between general taxes and special burdens or assessments, imposed for local purposes, has always been well understood in this state, and was generally recognized in all those states whose institutions and judicial decisions had most influence here at the time of the adoption of the Constitution; and such local assessments were not then, and never have been, understood here as referred to by the general provisions of statutes in reference to "taxes." This is sufficiently evident from the authorities cited by the defendant's counsel. Besides, if these local assessments are within these sections, then no pro-

perty paying "specific taxes," such as that held by railroad companies in the city of Detroit, would be liable to any assessments for streets or sidewalks; this would be contrary to the universal understanding. See also *Canal Trustees v. Chicago*, 12 *Ill.* 405; *Ottowa v. Trustees, &c.*, 20 *Ill.* 423; *Nassau street*, 11 *Johns.* 77.

But the next section (13) of the same article of the Constitution, requires the Legislature to "provide for an equalization, by a state board, once in five years, of assessments on on all taxable property, except that paying specific taxes." Surely this provision, directly connected with those in the 11th and 12th sections, can have no reference to local assessments for paving, but only to such assessments as furnish the basis of the ordinary annual taxes. The Constitution of Louisiana, under which the case of *Municipality No. 2 v. White* was decided, has no such provision in reference to equalization, and, though similar to, is not identical with ours in reference to taxation and assessment.

There being no other limitation in the Constitution upon the taxing power of the Legislature than those already noticed, it follows that if the mode of raising the expenses of grading and paving, provided by this charter, can, in any just sense, be considered a tax or an assessment, or if, independent of the Constitution, it could be considered as an exercise of the power of taxation, it is free from all constitutional objection.

If an exercise of the power of taxation, then, though it does take private property for a public use, it is not without compensation; as the owner is always supposed to receive compensation in the benefits conferred by government in the proper application of the tax. And if the provision of the Constitution, against taking private property for public use without compensation, is to be construed to apply to any case in which the property is not taken in kind, to be itself used by the public, then the presumption of compensation, in the mode just men-

tioned, must be a conclusive one in all cases where the property is taken in payment of a tax; or no valid tax could ever be imposed or collected; since human wisdom has never devised, and never can devise, any system of taxation which will not produce great inequalities, both in the apportionment of the tax and in the benefit to arise from its expenditure. And however equally imposed, and though with express reference to benefit, there will yet be individual cases where the person taxed will, in fact, be injured, rather than benefited, by the expenditure.

But if the mode of raising the money in the case before us is not an' exercise of the power of taxation, then it may become a very grave question whether it does not fall within the prohibition of the ninth and fifteenth sections of article fifteen of the Constitution, against taking private property for public use for improvements in cities and villages without compensation.

The early cases in New York, which have been followed in many other states, and which held that assessments for streets and other local purposes were not a tax, because they were a benefit rather than a burden, can have little weight in determining whether the provisions of the charter here in question are an exercise of the taxing power. The power to exact money or property from individuals, for a public improvement, must rest upon the public necessity and the public convenience, not upon the private benefit to the individual. The latter is but an incident which grows out of the exercise of the power, and may and does furnish a very proper, and, in my opinion, the most equitable, rule for apportioning the public burden among individuals. But the statute before us does not profess to adopt the principle of private benefits in any respect whatever, though it may not be wholly inconsistent with it; since, probably, as a general rule, the land in front of which the improvements are made will be more benefited than those more remote; yet this is not so necessarily the result that the court can

take judicial notice that it must be a benefit in all cases. And it is easy to conceive cases in which it would be an injury instead of a benefit. And if the private benefit had been made the basis of apportionment, the question whether benefit or not, and the amount of such benefit, would be questions of fact, to be ascertained in each individual case by some board or tribunal appropriately constituted for that purpose.

The Legislature is not competent to ascertain and adjudicate upon facts in individual cases, so as to bind private rights. This is not one of the functions of legislative power. See *Parmlee v. Thompson,* 7 *Hill,* 80, *and note.*

It is very certain that this is not a specific tax within the meaning of that term in the Constitution. And, with the single exception of specific taxes, the terms tax and assessment, both, I think, when applied to property, and especially to lands, always include the idea of some ratio or rule of apportionment; so that, of the whole sum to be raised, the part paid by one piece of property shall bear some known relation to, or be affected by, that paid by another. Thus: If one hundred dollars are to be raised from tracts A, B, and C, the amount paid by A will reduce, by so much, that to be paid by B and C, and so of the others.

In the case of specific taxes, as well as duties and imposts, though the amount paid by one is not affected by that paid by another, yet there is a known and fixed relation of one to the other, a uniform rate by which it is imposed upon the whole species or class of property or persons to which the specific tax applies; and this is so of duties and imposts, whether specific or *ad valorem.* To compel individuals to contribute money or property to the use of the public without reference to any common ratio, and without requiring the sum paid by one piece or kind of property, or by one person, to bear any relation whatever to that paid by another, is, it seems to me, to levy a forced contribution, not a tax, duty or impost, within

the sense of these terms as applied to the exercise of
powers by any enlightened or responsible government.

In the case before us there is no ratio, relation or common rule, or standard of apportionment, whatever. Nor can there be, unless we can judicially assume that there is absolute uniformity of soil and surface throughout the district to be improved, and even then the expense must often vary from other causes. The amount paid by one is neither increased nor diminished by that paid by another, nor is there any uniform rate, as in the case of specific taxes, duties and imposts. This is called the assessment of a tax; but there is nothing for assessors to do. What is actually done, and all that can be done, is to estimate the expenses of the improvement to be made in front of a particular lot, to impose that amount upon the lot and the owner, and to issue a warrant for its collection. This is the whole process of what is called "levying and assessing a tax ·or assessment." I can not, I confess, see anything in this process in the nature of an assessment, or the assessment of a tax; and, if not so in fact, the names by which the statute may have designated the process can not make it so.

This mode of imposing the burden would certainly seem to rest entirely upon the idea of a *duty* on the part of the owner to grade and pave the street in front of his lot; a duty which, it would seem, was supposed to grow out of the ownership; and in this respect it would seem to resemble a police regulation. And yet this idea of duty is not carried out; as the owner is not allowed to make the improvement for himself. But this supposed duty is made the basis of another duty, that of paying the city for making the improvement for him, which they will not permit him to make for himself, and of course without any default on his part in the performance of his duty. This case, then, differs essentially, if not entirely, from the cases in the state of New York, and many other states which have followed

her example, where street assessments are, by statute, required to be made in proportion to the benefits to be derived from the improvement. In all those cases there will be found to have been a board of assessors, or some other officer or board, whose official duty it was to ascertain the relative amount of those benefits to each lot or tract along which the improvement extended, or within some other area or district; and the tax was imposed according to those benefits, thus ascertained. The whole sum to be raised, within the area or district to be taxed, constituted a common burden within such area or district. There was thus a clear principle for the apportionment of a public or common burden. The amount paid by one was affected by the amount paid by another. This, then, was essentially in the nature of a tax, and may well be held to be an exercise of the power of taxation, as shown by the very able opinion of Judge Ruggles, in *People v. Mayor of Brooklyn*, 4 *Comst.* 419. This case has been almost universally followed in every state where a similar mode of street assessments has been adopted. Every case of a street assessment cited by the counsel of the defendants, involves a similar principle. I do not here speak of sidewalks, but of streets. Even the case of *Hill v. Higdon*, 5 *O. S. R.* 243, where the tax was assessed at a uniform rate per foot front, was under a law requiring the assessment to be in proportion to the benefit; and the irresistible inference is, that in that particular case the assessors had ascertained that the benefit would be in proportion to the extent of frontage. But if the act had *required* the assessment to be in proportion to the frontage, this would have been an intelligible basis of apportionment. And a similar remark may perhaps be made upon the case of *Williams v. Mayor of Detroit*, 2 *Mich.* 560, where the charter authorized the Council to raise the funds substantially in the mode prescribed by the present charter, "*or otherwise as they may direct;*" and the assessment was made in proportion to the frontage:—See *pp.* 568 *and* 571. But

in the case before us the sum demanded is no proportion of a common burden. There is no common burden to be apportioned.

With the exception of the case of *Weeks v. City of Milwaukee*, which rests upon a peculiar feature of their Constitution not found in ours, and where the absence of a rule of apportionment seems to have been overlooked, I have met with but one reported case in which it has been directly held that the duty and the whole expense of making a street improvement in front of the owner's property could be imposed upon the owner without reference to any ratio or rule of apportionment; and that is *State v. Dean*, 3 *Zab.* 335 ; and a similar principle may perhaps be involved in *State v. Mayor of Jersey City*, 4 *Zab.* 662, though in the latter case the statute (which I have not been able to find) seems to have required the assessment to be made upon the property benefited — the case does not say in proportion to the benefit. In *State v. Dean*, the doctrine was carried to such an extent, as in my view, to detract much from the authority of the case, since — if I rightly understand the case — it holds that, where the owner lays out and dedicates a street to the public, the public have a right before, and as a condition precedent to, acceptance, to compel the owner to defray the expense of putting it in order fit for use as a street. The principle upon which this can be done I have not been able to discover.

The distinction between the power of taxation and that of taking private property by right of eminent domain has, perhaps, no where been laid down with more clearness and precision than by Judge Ruggles, in the case of *The People v. Mayor of Brooklyn*, above cited. " Taxation," he says, " exacts money or services from individuals, as and for their respective shares of contribution to any public burthen.

" Private property, taken for public use, by right of eminent domain, is taken, not as the owner's share of contribution to a public burthen, but as so much beyond his share.

"Special compensation is, therefore, to be made in the latter case, because the government is a debtor for the property so taken; but not in the former, because the payment of taxes is a duty, and creates no obligation to repay, otherwise than in the proper application of the tax.

"Taxation operates upon a community, or upon a class of persons in a community, and by some rule of apportionment.

"The exercise of the right of eminent domain operates upon an individual, and without reference to the amount or value exacted from any other individual or class of individuals."

In the general correctness of these distinctions I fully concur. Tested by these rules, the imposition of the burden in the case before us is not an exercise of the power of taxation, and the taking of property which the charter authorizes, unless it can be justified under a police power, is, within the rules here laid down, an attempt to exercise the right of eminent domain without regard to the constitutional restrictions upon that right.

It creates no public or common burden, but imposes a private individual burden for a public purpose.

It does not operate upon a community or class of persons or property by any rule of apportionment. There is no apportionment, *and nothing to be apportioned.* The amount required for the improvement in front of a lot is imposed *as an entirety* upon such lot, without any reference to the sum imposed upon any other lot. It operates upon an individual, and upon each distinct tract, without reference to the amount or value exacted from any other individual or tract, or class of individuals. If the act had been confined to the arbitrary exaction of a specified sum from a single individual by name, it would have involved the same principle of imposing the burden. If the Legislature have arbitrarily exacted one hundred dollars from A, will it render the act any the less objectionable because, without any

reference to the sum exacted from A, they have with equal or still greater caprice required one hundred and fifty from B?

The grading and paving of the street is for the public use and benefit; the owner is entitled to no peculiar use of the street not common to the public, and though he may derive a greater benefit generally (which may be considered in apportioning a tax), yet it is the public use only which can justify the imposition of the burden, even as a tax. This law takes the property of the lot owner for this public use, not directly, it is true, but to be converted into money and applied to this public use. If taken under the taxing power, he is presumed to receive compensation in the expenditure of the tax; but if not so taken, there is no such presumption.

The Constitution, under the head of Corporations, article 15, section 9, provides, "The property of no person shall be taken by any corporation for public use, without compensation being first made or secured, in such manner as may be prescribed by law." Section 15 of the same article, "Private property shall not be taken for public improvements in cities and villages without the consent of the owner, unless compensation therefor shall first be determined by a jury of freeholders, and actually paid or secured in the manner provided by law."

It is true these provisions do not refer to a taking of property in payment of a tax, or a burden imposed under the taxing power, nor in payment of a debt or other duty to the public. It is doubtless true also, that these prohibitions are primarily aimed against a direct taking of property, to be used in kind by the public; though the language itself makes no such distinction, and the reason why it is properly so construed is, because all the recognized legal modes of indirect taking include the idea of compensation. This is the only reason for the construction. The maxim, therefore, applies to these prohibi-

tions, in its full force, that, what cannot be done directly shall not be done indirectly. And, where indirect means are employed to accomplish what is forbidden to be done directly, the law rejects these indirect means, as of no validity, and treats the case as if the same end were obtained by direct means. If this were not so, the whole effect of the prohibition might, in all cases, be evaded with impunity by the simple device of making the process consist of two steps instead of one. And while the Legislature could not authorize the taking of A's land for a public park, they might, under the specious name of a tax or assessment, raise by the sale of A's land the whole sum necessary to pay B for his land, to be taken for that purpose; and from the sale of B's land fronting on the park, the whole expense of improving it and erecting a city hall upon it. And though they can not take and use your property directly, they may sell it, and use the money to purchase other property, of the same or any other description.

It is true that liability to abuse is not always, of itself, strong evidence of the non-existence of a power, since all legislative and all *human* power is liable to abuse. But the fact, that a proposed rule of construction would remove all constitutional restraint, is very strong evidence that the rule must be erroneous.

If it be claimed that the constitutional prohibitions in question do not apply to this mode of taking private property, because the constitutional mode of ascertaining the compensation is not applicable to such a case, the reply is, that this very fact may be very strong evidence that the taking is in violation of these prohibitions; since the property is taken in a mode not authorized by them, and it is forbidden to be taken in any other mode.

The Supreme Court of Ohio, in *Scovill v. Cleveland,* 1 *O. S. R.* 126, admit that where the proceeding, under the name of a tax or assessment, is merely colorable,

and is really and substantially an exercise of the right of eminent domain, it should be treated as the latter, and held void. The same idea is taken for granted by the court, in *People v. The Mayor of Brooklyn*, above cited. The constitutions of Ohio and New York are substantially the same as ours, so far as respects this question.

But it may be said that, under a valid law, providing for the assessment of a tax upon any ordinary rule of apportionment, cases may occur where the rule of apportionment could not practically operate, and where the burden imposed upon one individual or tract would have no relation to that paid by another — that, under the acknowledged power of the Legislature to establish, or to authorize the Council to establish, assessment districts for local purposes, it may happen that the whole property in the district may consist of a single tract, and belong to the same person. This may be true, as a legal possibility, though it may be doubted whether it would be likely to occur in fact.

But as no such point is involved here, I do not propose to give a definite opinion upon a hypothetical case. The case supposed may, however, show the propriety of fixing some legislative minimum for assessment districts.— But should the Council, acting in good faith with reference to the public necessities, under a law authorizing a tax by some rule of apportionment, fix such district of reasonable extent, the power of taxation, I apprehend, would not be defeated by the accident of ownership. If the law fixes the rule of apportionment for all the property within the district, it could not probably make any difference who or how many might happen to own it; otherwise a valid rule might be defeated by the act of an individual. But the question is very different when the law provides *no* rule of apportionment, and applies *no* principle of taxation, within any district, as in the case before us.

An accidental result may happen under any system or rule of law; but it does not follow that the Legislature may adopt the accident for the rule, because they had power to adopt the rule from which the accident resulted. Such a mode of reasoning would nullify every provision in the Constitution.

It only remains to inquire whether this mode of raising the expense of a public improvement can properly be held to fall within the class of police powers—a class of powers not generally supposed to come within constitutional provisions against taking private property for public use.

In Massachusetts substantially the same mode of imposing the burden for constructing *sidewalks* has been adopted as that provided for paving streets in the city of Detroit:—*City of Boston v. Shaw*, 1 *Met.* 137; *City of Lowell v. Hadley*, 8 *Met.* 180; *Lowell v. French*, 6 *Cush.* 223. These cases will be found to rest mainly and professedly upon the authority of *Goddard's Case*, 16 *Pick.* 504. This was an ordinance of the city of Boston requiring the owners and occupants of houses bordering on streets, to clear the snow from the sidewalks adjoining their respective houses and lands, and imposing a penalty for a neglect of this duty. This was expressly, and I think very properly, held to be a police regulation, and sustained on that ground; and the reasoning of the very able judge who gave the opinion of the court, shows that the decision was based substantially upon the principle of regulating the *use* of private property, or property partaking of the character both of public and private, in a manner deemed necessary to the public safety and convenience; which is, I think, the most prominent and distinctive feature of a police regulation. And the course of reasoning adopted is not applicable, in any appreciable degree, to the grading and paving of streets. The adjoining owner is recognized as having " a peculiar interest in

and benefit from the sidewalk, distinct from that which he enjoys in common with the rest of the community [and consequently from that which he enjoys in the street]. He has this interest and benefit often in accommodating his cellar door and steps, a passage for fuel, and the passage to and from his own house to the street. To some purposes, therefore, it is denominated his sidewalk. For his own accommodation he would have an interest in cleaning the snow from his own door."

Now, the only feature in this case which can make it an authority for imposing upon the owner of a lot the whole expense of constructing a sidewalk in front of it is, I think, this "peculiar interest," or qualified property, which a man is supposed to have in the sidewalk; and this does not extend, in any appreciable degree, to the street itself. Accordingly, while a similar mode has been quite generally adopted in imposing the burden of building sidewalks—see (in addition to the cases above cited from Massachusetts) *Bonsal v. Mayor of Lebanon,* 19 *Ohio,* 418; *Mayor v. Mayberry,* 6 *Humph.* 368; *Washington v. Mayor of Nashville,* 1 *Swan,* 177; *Paxon v. Sweet,* 1 *Green,* (*N. J.*) 196—it seems much less generally applied to streets. And, in Ohio, Tennessee, and New Jersey, this principle, as applied to sidewalks, is carried out in the manner usually adopted for carrying into effect police powers; by imposing upon the owner the *duty* of constructing the walk himself, and, upon his default in the performance of the duty, by doing the work for him, and imposing upon him the expense as a *penalty* for a *breach of duty,* which penalty is generally collected by suit.

It is true the courts do not, in all the cases just cited, expressly term this a police regulation; but the reasoning, I think, can only be justified on this ground. And in *Mayor v. Mayberry,* which seems to be the leading case in Tennessee, it is expressly declared not to be a tax, and the decision is professedly based upon the authority

of Goddard's case, above cited. The view taken in *Bonsal v. Mayor of Lebanon*, above cited, is substantially the same.

In some of these cases, it is true — especially *Washington v. Mayor of Nashville*, and *Paxton v. Sweet* — the general language of the court, *arguendo*, is broad enough to sustain the power in question in the case before us. But the language must be understood *secundum subjectam materiam*, and can not be considered judicial authority beyond.

There would be great hazard in the attempt to bring within the field of police regulations cases not already recognized as such, and not, by any necessity, required to be so recognized. A power once admitted as a police power is hardly susceptible of accurate definition, and difficult to be restrained within any prescribed limits; and ought therefore, as far as possible, to be confined to the doing of those things which are necessary to the public welfare, and which, yet, can not be done at all, or without serious inconvenience, under specific recognized powers which are susceptible of restraint within known and defined limits.

But the raising of money for the grading and paving of streets, is not one of those public necessities which can not be conveniently met by the well - recognized power of taxation. The exigency falls directly within the appropriate exercise of this power. And to ignore this well-understood and defined power, and resort to a police power to accomplish the same end, would be like passing from terra firma into void space, where no sensible object exists by which to guide our course.

I am therefore unwillingly brought to the conclusion that the provisions of the charter here in question are in direct conflict with the ninth and fifteenth sections of the fifteenth article of the Constitution. I am unwillingly brought to this conclusion, because some months of delay must occur

before the defect can be cured by legislation, and con-
tractors may suffer, and necessary public improvements may
be checked, during the interval. Besides, I think it quite
probable — though we have no evidence of the fact — that
owing to the peculiar circumstances of the property affected,
and as the result of accident rather than the system, the
sum imposed upon the complainant's property may not
greatly, if at all, exceed the amount which might have been
assessed under a legitimate system of taxation, which the
Legislature had the power to adopt. But these considera-
tions can have no weight in determining the question of
power.