# JULY TERM, 1869, AT LANSING.

## Frederick Motz and 13 others v. The City of Detroit et al.

*Assessments for local improvements : Taxing districts: Frontage : Constitutional law : Uniform rule of taxation.* The provisions of the state constitution requiring a uniform rule of taxation, and cash valuation, in the local assessment of property *Const. Art. 14, § 11, 12,* have no application to local assessments for local improvements, such as the grading and paving of a city street, but relate only to the valuation of property, and its taxation for general purposes.

*Apportionment: Taxation.* But apportionment of the burden is a necessary element in all taxation, and any attempt at the exercise of this power, without it, is absolutely void.

*Paving Assessment : Taxing Power: Police power: City Charter : Constitutional Law : Interior spaces.* The charter of Detroit provided that the Common Council might cause the streets to be graded and paved, and assess the whole expense of such grading and paving in front of any particular lot, to the center of the street, upon such lot, and make such assessment a lien upon the premises until paid, and also a personal charge against the owner, and authorized a warrant for distress and sale of his goods for the same.[*]

*Held,* that such assessment cannot be sustained as an exercise of the taxing power of the state, inasmuch as it wholly disregards apportionment.

Neither can it be sustained as an exercise of the police power of the state, as parties cannot be compelled to make improvements of this character under such power.

But the apportionment of the expense of the burden for such an improvement may as properly be made on a ratio of frontage, as on one of valuation, if in the opinion of the legislature the former system is most just and equitable. In such cases there must be taxing districts, and the apportionment must be made throughout such districts.

*Held, further,* that a provision in the charter authorizing the assessment of the cost of the grading, paving, &c., of the interior spaces (at the intersection of streets) upon each block, in such proportions as the common council should deem just and equitable, is constitutional.

*Common Council : Effect of acceptance of contract.* Where the Common Council duly accepted and approved certain paving done in pursuance of a contract entered into between the city of Detroit and certain contractors ; in a bill by taxpayers to enjoin the collection of the cost of such work : *held,* that this court has no right

---

[*]The charter has since been amended in this respect. See *Laws 1869, Vol. 3, 1636.*

to review the decisions of said Common Council upon the facts: It not being charged that fraud or mistake has intervened and influenced such decision. So long as the Common Council keep within the limits of their jurisdiction as defined by the constitution and statutes of the state, and the members are guilty of no intentional wrong or corrupt conduct in the discharge of their official duties, the court have no power to control the exercise of their legal discretion, or to overrule and set aside their judgment, but must accept their conclusions as warranted by the facts, and as binding alike upon the city and upon all of its inhabitants.

*Effect of petition for paving, on illegal assessment: Equitable estoppel.* Where several taxpayers petitioned the Common Council to cause a certain street to be paved and the paving was completed in compliance therewith, without complaint or objections on their part to the acts of the contractors or the Common Council in relation thereto: *Held*, that they must be taken to have been willing and actively consenting parties to all the proceedings which led to the assessment for its cost, and to have impliedly, at least, consented that such an assessment should be made.

Whether, therefore, such assessment is legal or not, there is no ground for claiming the interposition of a court of equity to restrain the collection of such assessment by injunction.

*Heard April 28. Decided July 12.*

Appeal in Chancery, from Wayne Circuit.

The bill in this cause was filed by fourteen tax payers to restrain the city of Detroit, through its officers, from enforcing an assessment sought to be enforced against their lots fronting on Grand River street, for paving the same with "Nicholson Pavement."

The bill set forth that the said lots were unequal in frontage and depth, and that several were irregular and triangular in form, that the street fronting them was of unequal surface and required much excavation and filling up, and that some of said lots were vacant and some highly improved.

That the said pavement was a patent and owned by the contractors and was therefore a monopoly, and hence there could be no "lowest bidder" under the city charter.

That the construction of said work was defective in several material respects.

That each of said complainants were charged in the assessment rolls (copies of which were attached to the bill), with the gross cost of the expense of the pavement in front of each lot, without reference to the amount paid by any other lot.

MOTZ ET AL. *v*. THE CITY OF DETROIT ET AL.

The bill further charged that the Common Council had not complied with the provisions of the charter, and the charter itself was unconstitutional. .

A perpetual injunction was prayed for.

The answer denied that the said pavement was a monopoly, or that the work was improperly executed. That the Common Council having accepted the work, the complainants had no right to object; and, further, that eight of the complainants having signed a petition requesting the Common Council to pave said street, and having made no objection during the progress of the work, were estopped from asking relief.

From the testimony of the City Surveyor who prepared the several assessment rolls, it appeared they were made as follows:

1. The expense of the *paving* from the line of one cross street to another was assessed as follows:

The actual cost of the *paving* immediately in front of a lot to the centre of the paved street was assessed upon said lot.

2. The expense of the *grading* between the same lines was computed in gross, and then assessed upon the lots within said lines according to their frontage.

3. The expense of the paving, grading, curb stones, etc. of the spaces produced by the intersection of streets with said Grand River street was assessed as follows;

*a*. If the street crossing Grand River street was equal in width on both sides, then one-fourth of the cost of paving etc., of the spaces produced thereby was assessed upon one-fourth of the superficial feet of the block adjoining the respective four angles.

*b*. When the width at the point of entrance and exit of a cross street varied, then the cost of the space produced on either side of Grand River street to its centre would be divided equally between one-fourth of the two adjoining blocks on the respective sides of the street.

c. When a cross street entered Grand River street, but did not cross it, then the cost of paving, etc., of the space produced by it to the centre of Grand River street would be assessed equally upon one-fourth of the superficial area of blocks adjoining said portion of said interior spaces so paved.

d. When 'a block was triangular, then the expense of the .one-fourth of the interior space would be assessed upon one-third of the superficial area of such triangular block; but if the adjoining block was not triangular then *the other half* of the cost of said space would be assessed upon one-fourth of it.

The following is the provision of the City Charter under which said assessments were made:

"The Common Council shall have power to grade, pave, repair, and otherwise improve the highways, streets, interior public spaces," etc., and to provide for paying the costs and expenses thereof by assessment on the owner of the lot or premises in front of or adjacent to which such highways, streets, etc., may be directed to be graded, paved, re-paved or otherwise 'improved. *Provided*, That the cost of such grading, paving, etc., such interior or public spaces shall be assessed to each block in such proportion as the Common Council shall deem just and equitable; *Provided, further*, that each block shall only be assessed to the centre of such interior or public space."

The case was heard upon the pleadings and proofs, and a perpetual injunction was granted.

*A. D. Fraser, & Wm. Jennison,* for complainants.

1. Of the fourteen complainants, six signed a petition to the common council to cause Grand River street to be paved; but not with any specific kind of pavement.

The right of petition is a privilege common to every citizen, and carries with its execution nothing more than the expression of a desire that the legal authorities should

gratify a reasonable wish within the legal power. The request assumes the existence of a legal power and a legal exercise of it.

It was for the city to determine whether it had the power.

There is no privity of contract—no principle of agency involved. The city could order the paving without any petition. This act of petitioners, therefore, created neither a legal nor equitable bar to their raising any legal objection to the tax.—*City Charter, p. 50, § 14, and p. 120.*

2. The contract entered into between Smith & Cook, and the city, among other requirements, prescribed:

1st. That the "best of materials" should be used.

2d. That "beach or bank-sand or gravel" should be used for the road bed.

3d. That the "spaces between the blocks" should be filled with "clean gravel and hot coal tar," and that the gravel should "be applied thoroughly dried and heated enough not to chill the tar."

The breach of these conditions are alleged as a violation of said contract.

The testimony tends to show:

*a.* That the sand used did not comply with the specifications.

*b.* That the gravel was not applied hot when put into the spaces between the blocks.

The defendants admit that no artificial process was adopted to dry the gravel, but insist that the sun dried the gravel sufficiently.

The contract required that the gravel should be thoroughly heated when applied, and it is not for the defendants to urge that some other mode was equally as good: Besides, Nicholson Pavement is a patent, and cannot be varied.

The failure to construct said pavement according to the terms of the contract is a good defense to the enforcement of the tax.

3. The acceptance and approval of the work by the city concludes the parties to the contract; but no others. The complainants were not parties.

When the city seeks to deprive the citizen of his property to pay for such an improvement, he has a right to ask if the proper steps have been taken to justify the exercise of this sovereign power; and this involves an inquiry into the mode of performing the work. This is the first time that he could exercise the right.

If the work was imperfect, the owner of land adjoining it was liable to pay for its repair, or re-paving.—*City Charter, p. 8.*

4. The chief question is, was the assessment complained of made in accordance with law?

Seventeen of the complainants' lots front upon Grand River street.

Of these, eleven lots are triangular, and of irregular form, while three lots belonging to the other complainants front upon side streets.

These lots vary in frontage, in depth and in superficial feet.

Some are vacant, and some have valuable buildings upon them.

In addition to these diversities, the grading in front of the several lots varies in a very great degree.

Then, again, many of them extend through to other streets, and thus have two fronts.

While again others (owing to the angle at which certain streets cross Grand River street upon one side of the street) have no lots opposite them to bear a share of the paving, on account of interior spaces formed by irregular streets.

The blocks which give rise to these diversities are more irregular than the lots.

There is, perhaps, no main thoroughfare in this city, which presents such a strange variety of form and surface of both lots and blocks as does this one.

The resolution of the common council was to " pave Grand River street from First street to Eighth street."

Mr. Robinson, the City Surveyor, who prepared the assessment rolls, testifies that several distinct principles were applied in preparing them, viz:

*First :* The expense of the paving from the line of one cross street to another was assessed as follows:

The actual cost of paving immediately in front of a lot to the centre of the paved street, was assessed upon said lot.

*Second :* The expense of the grading between the same lines, was computed in gross, and then assessed upon the lots within said lines according to their frontage.

*Third :* The expense of paving, grading, curb stones, &c., of the spaces produced by the intersection of streets with said Grand River street was assessed as follows:

*a.* If the street crossing Grand River street was equal in width on both sides, then one-fourth of the cost of paving, &c., of the spaces produced thereby were assessed upon one-fourth of the superficial feet of the block adjoining the respective four angles.

*b.* When the width at the point of entrance and exit of a cross street varied, then the cost of the space produced on either side of Grand River street to its centre would be divided equally between one-fourth of the two adjoining blocks on the respective sides of the street.

*c.* When a cross street entered Grand River street, but did not cross it, then the cost of paving, &c., of the space produced by it to the centre of Grand River street would be assessed equally upon one-fourth of the superficial area of blocks adjoining said portion of said interior space so paved.

*d.* When a block was triangular, then the expense of

the one-fourth of the interior space would be assessed upon one-third of the superficial area of such triangular block; but if the adjoining block was not triangular, then the other half of the cost of said space would be assessed upon one-fourth of it.

5. We insist,

a. That these assessments were made in violation of the mode prescribed by the charter.

b. That the provisions of the charter, regarding the mode of making these assessments are in violation of the constitution.

It will not be denied that the Common Council, in a proceeding of this nature, are strictly confined to the terms of the charter.

When the mode is prescribed it is as essential to follow it as to keep within the power. — Cooley's Const. Lim. 195; Sutton's Heirs v. City of Louisville, 5 Dana, 29, 30; Bank of Augusta v. Earle, 13 Peters, 587; 18 Ohio, 318; 2 Comst. 70; 3 Barb. 275; 9 Id. 152, 535; 23 Id. 166.

The charter provides that the entire cost of grading, paving, &c., should be paid by assessment on the owner of the lot in front of or adjacent to which such street, &c., may be directed to be paved.

In other words, the lot must pay for the gross cost of the improvement in front of it. — City Charter 1867, p. 54, § 103, subd'n 11; Woodbridge v. Detroit, 8 Mich. 274; Williams v. City of Detroit, 2 Id. 560.

The surveyor testifies that the cost of the paving only was so assessed.

But that the gross cost of the grading of a block was divided between the lots according to their frontage.

This, then, was in violation of the charter, and therefore without authority.

The charter further provides that the cost of grading, paving, &c., of the interior spaces "shall be assessed in

such proportion as the Common Council shall deem just and equitable."— *City charter, p. 55.*

This power, we contend, the legislature could not delegate, because it did not possess it.

(See this point discussed under next head.)

6. The provision in the charter is unconstitutional.

And, first, under what class of powers, if found at all, does it come?

It must be found under one of three powers.

*a.* The right of ·Eminent Domain.

*b.* The Police power.

*c.* The Taxing power.

It cannot be maintained under the first. It is not a taking of property in the first instance for some public purpose. And if it were, the prescribed constitutional method of ascertaining its value for the purposes of compensation has not been observed.— *Const. Art. 14,* § *2.*

Neither can it be sustained under the second. The courts thus far have confined themselves to sidewalks.— *Cooley's Const. Lim. 27 Cal. 613.*

We claim, then, that this law can only be sustained under the taxing power. — *Williams v. Detroit, 2 Mich. 560; Woodbridge v. Detroit, 8 Id. 274; Cooley's Lim. p. 505.*

The following are the general provisions in our constitution:

"The legislature shall provide an uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied upon such property as shall be prescribed by law."— *Const. Art. 14,* § *11.*

"All assessments hereafter authorized shall be upon property at its cash value."— *Art. 14,* § *12.*

"The legislature shall provide for an equalization, by

a State Board, &c., of assessments on all taxable property, &c."—*Art. 14,* § *13.*

"The legislature shall provide for the incorporation of cities and villages, and shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit."—*Art. 15,* § *13.* (The word "assessment" is omitted.)

"Private property shall not be taken for public improvements in cities and villages without the consent of the owner, unless compensation, &c."—*Art. 15,* § *15.*

"When private property is taken for the use or benefit of the public the necessity for using such property, and the just compensation to be made therefor, except when to be made by the state, shall be ascertained by a jury, &c."—*Art. 4,* § *2.*

"The property of no person shall be taken for public use, without just compensation therefor."—*Art. 14,* § *14.*

The first inquiry is, has the legislature, in authorizing this mode of raising the expense, exceeded its constitutional power?

Under the weight of modern authority, the constitution being but a limitation of the legislative power, this question is answered by another: Has the power been prohibited by the state constitution?

We answer, yes. The legislature "shall provide *a uniform rule of taxation.*" *Const. Art. 14,* § *11.*

What is taxation? It is the exercise of the power which takes money from the citizen as part of his contribution to a public burden. And it operates upon a community or class, and by some rule of apportionment by which the amount paid by one person or piece of property shall bear some relation to the amount paid by another. The very idea of a tax suggests an orderly, equal and fair distribution. — *Woodbridge v. Detroit, 8 Mich. 274; People v. Mayor of Brooklyn, 4 Comst. 419; Cooley's Const. Lim. p. 479; Blackwell on Tax Titles, p. 80, 10 Ohio 165;*

*Municipality No. 2 v. White, 9 La. 447; State v. Merchants Ins. Co. 12 La. 802.*

While the right to tax is an attribute of sovereignty, still it is limited by certain well defined principles of constitutional government. — *Sedg. Const. Law, 414; Tyson v. Halifax, 51 Penn., 9 ; City of Covington v. Southgate, 15 B. Mon. 498 ; Merrick v. Amherst, 12 Allen 504 ; Morford v. Unger, 8 Iowa, 92; Ryerson v. Utley, 16 Mich. 276; 2 Kent's Com. 231; Cooley's Const. Lim. 493 12 Cal. 76 ; Burnet v. Sacramento, 18 Id. 343.*

Taxation not levied according to principles upon which the right to tax is based, is an unlawful appropriation of private property for public uses.

This power, then, must be exercised with some regard to a distribution of burdens, and not arbitrarily.

*a.* It cannot be based upon the idea of benefits :

The improvement of private property is no·part of the object of government, and if it were so, there is no mode provided for ascertaining benefits. — *9 La. 451, supra.*

*b.* It is equally clear that taxation, as such in general, can only be justifiable for public purposes and affecting some well defined community.

*c.* Some *rule of apportionment* must be observed ; and these principles apply equally in local assessments. — *Cooley's Const. Lim. 504, 5, 507, 8, 495, 9 ; Weeks v. Milwaukee, 10 Wis. 243 ; Lumsden v. Cross, 10 Id. 284 ; Knowlton v. Sup. of Rock Co. 9 Id. 419 ; Municipality No. 2 v. White, 9 La. 451 ; Scovill v. Cleveland, 1 Ohio 126 ; Hill v. Higdon, 5 Id. 243, 5 Id., 589 ; North. Ind. R. R. Co. v. Connelly, 10 Id. 159 ; Maloy v. Marietta, 11 Id. 636.*

Whether the tax be confined to a territorial limit or not, this *uniform rule* applies equally to local as well as general assessments.

This being so, is there anything in the constitution which modifies this rule, when assessments for local im-

18 Мгон.—н[8]

provements are sought to be made by municipal corporations?

We answer no. — *Const. Art. 15, § 13 ; 9 and 10 Wisconsin, and 5 Ohio, supra.*

In the Wisconsin and Ohio constitutions, the word "assess" is contained in the section empowering municipal corporations to levy taxes for local improvements, and the courts of those states say that were it not so, assessments similar to those in question could not have been sustained.

In view of the provisions of the constitution — in view of the fact that the legislature has not established taxing districts — we insist that this tax should be assessed upon the entire city: more especially in view of,

1st.   The unequal division of the wards.

2d.   The unequal width of the streets.

3d.   The unusual number of of angular blocks and lots produced by the original plan of the city.

The cases in New York, Ohio, Wisconsin, and some other states, all show that where special districts were taxed, there were special constitutional provisions and special legislation. —*People v. Brooklyn, 4 Comst. 419 ; 1 Ohio St. 126 ; Scovill v. Cleveland, 5 Id. 243 ; Hill v. Higdon, 10 Wis. 258.*

But if it be urged that the legislature has the power to exercise such special legislation upon special districts,

We say,

1st.   That neither the constitutional requirement of uniform taxation nor any rule of apportionment — the essential principle of just taxation — has been complied with.

2d.   The legislature has made no provision for "taxing districts."

It has adopted the arbitrary rule of authorizing the common council to make each lot pay for the cost of the improvement in front of it.

This is not a tax, but a forced contribution.

A single city lot surely can neither be called, nor made,

a district in this sense; much less can the individual owner be termed a community.

But even though the Legislature could do this they have violated the principle of just apportionment, by authorizing the common council to assess the cost of paving the interior spaces produced by the intersection of streets upon each block in such proportion as "*they shall deem just and equitable.*"—*Knowlton v. Sup. Rock Co., 9 Wis., 410, 421; Weeks v. Milwaukee, 10 Id. 242; Att'y Gen'l. v. Winn. L. & F. River, 11 Id. 35; Cooley's Const. L. 508; 25 Ill. 557; See Const. Art. 15, § 13; People v. Mahaney, 13 Mich., 498.*

The injustice of this is made very apparent by considering the difference of the cost of the interior spaces at opposite ends of the same blocks, owing to the difference in width of the cross streets.

According to the rule adopted by the common council therefore the assessment upon the lots on one end of a block would exceed the assessment upon the other end in proportion to the difference in the expense of paving the interior spaces; and frequently the lots upon the different sides of the same portion of a block would bear a tax differing as the width of a cross street would differ on either side of Grand River street.

As to the effect of levying an excess upon the true tax, see:—*Case v. Dean, 16 Mich. 12; 8 Wis. 182; 11 Id. 497; Blackwell on Tax Titles.*

7th. Whatever the power of the legislature, the common council have exercised a power not delegated to them, viz: in assessing upon each lot the actual cost of *paving* in front of it, but following a different rule in assessing the cost of grading, viz: dividing the gross cost between the lots within a given limit; and even in this an arbitrary principle is introduced, because the blocks between two streets varying in width bear a larger share of the grading than they otherwise would.

And this suggests that the terms "blocks" and "adjacent" have no fixed definition in this act.

All the authorities that justify taxing a district assume that the entire cost of the improvement was assessed upon such district by some rule of apportionment; yet here we have three different rules of assessment applied on each one of these assessment rolls.

Had the council the power to assess according to a district, the least they could have done would have been to treat the space proposed to be paved, viz: from First to Eighth street, as a district, and then assessed the gross expense upon it.

In this case they have gone out of the district and taxed lots not benefitted.—*City Charter, p. 59 § 11, 23.*

But we return to our original proposition, and insist that this tax should be borne by the entire city.

It is a public highway, used by the public, of no special benefit to the owner of the lot in front of it, but in point of fact used more frequently by the public at large than by the owner.

In conclusion, then, we say that from a careful examination of the provisions of the constitution it will appear that the various limitations placed upon the action of the legislature regarding this taxing power show the extreme jealousy of the people in conferring upon the legislature any general discretion in imposing unequal burdens upon real estate.

This assessment, then, is unconstitutional:

1st. Because it is not laid upon some community.

2d. Because it is not laid upon a well defined district established by law.

3d. Because it is unequal.

4th. Because no rule of apportionment is observed.

5th. Because it is not based upon a cash valuation.

*G. V. N. Lothrop,* and *Moore & Griffin,* for defendant.

This case arises on bill in equity filed to restrain the collection of a special assessment for paving Grand River street

The Common Council of the city of Detroit, by resolution of March 17, 1868, ordered that great thoroughfare known as Grand River street to be paved with the Nicholson pavement.

The contract was made in the usual form April 7, 1868 ; the work began shortly after, and was completed in the summer. The special assessments were made, and the rolls put into the' hands of the City Collector.

The complainants owned lots included in the assessment. To get the pavement was a good thing; to pay for it a disagreeable incident.

Therefore, about the last of September they filed their bill to enjoin the collection of said assessment.

Answer was filed, proof taken, and thereupon a decree was granted according to the prayer of the bill.

The defendants appeal from that decree.

*First.* The bill makes three distinct points:

1. That the Nicholson pavement was a patented invention held by Smith & Cook, and that in making the contract in question the council were obliged necessarily to reject the bids of others, though lower, and accept those of Smith & Cook.

2. That the work was not done according to the specifications of the. contract.

3. That the assessment was simply charging upon each lot the cost of the entire work in front of that lot; or, in other words, that there was no *apportionment* of the expense among the various lots, and that the charter and ordinances in this behalf are unconstitutional.

*Second.* How stands these points upon the answer and proofs ?

1. The answer admits that the Nicholson pavement is a "patent," but denies that lower bids were rejected for that reason.

The complainants offer no proof against that denial.

2. The answer denies that the pavement was not according to contract; sets up the approval and acceptance of the work by the council; and insists that this is a question that the complainants cannot raise.

The approval of the work by the City Surveyor and acceptance of the same by the council is proven without dispute. As to the quality of the work, in fact, evidence is given on both sides as to the kind of sand used, and as to the condition of the gravel.

3. The method of assessment charged in the bill is denied by the answer, and the only proof on the subject is that of the City Surveyor, who supports the statements of the answer.

*Third.* As to the objection, that this is a monopoly secured by patent, the question has been decided in this court.

Since that decision the New York courts have reached the same results.

*Fourth.* As to the character of the work, the complainants in their proof only seek to make two points: 1st, that the sand for the bed was poor in quality; 2d, that the surface gravel was not dried or heated.

As to the first, even the complainants' proof only makes the smaller portion of the sand used defective in quality; even the extent of this is wholly uncertain. Except in one instance, I believe, all the complaint on this subject is confined to the space between First and Third streets.

So as to the surface gravel. No one pretends that the gravel generally was wet. Nor does any one pretend that in any instance the gravel was either so moist or cold that the tar did not adhere or penetrate.

Motz Et Al. v. The City of Detroit Et Al.

Again, it is certain that the proof of complainants on this point does not make a general or common case of grievance. Even under the recent enlarged rule of this court as to parties, they cannot sustain their bill on these grounds.

On the other hand, the proof of defendants on both these points more than meets and refutes the evidence of complainants. The sand from the Cass farm is the only sand that any question is made about. And not over twenty-loads in all were brought from that place—Coughlin thinks not over eight.

But finally, with this matter the complainants have nothing to do.

The contract was made with the council; was to be done under the supervision of their agents, and to be accepted by them. This was all done. No collusion with the council is charged or pretended.

*Fifth.* There remains the principal point made in the case; the constitutionality of the method of assessment.

*a.* Now we object at the outset, that the case made by this bill on this subject is not sustained. Even if the method used is objectionable, still it is not the method alleged by the bill.

*b.* As to that part of the assessment, which is for the spaces at the cross streets, this is unquestionably levied upon a principal of proportionate distribution. The rule of apportionment is the superficial area of the lots. This is expressly provided for by the charter.

The common council is authorized to assess the cost of grading and paving these spaces, upon the blocks in such proportions as it shall deem equitable; provided, that each block shall be assessed to the centre of such interior or public spaces each way.—*Rev. Charter, chap. 5, § 103, (11th sub.) p. 55, § 203, p. 119 : Ordinances, p. 67, § 17, 20, 21 and 22.*

This assessment is made separate from the rest; stands .on the roll by itself; and can be paid by itself.

So far therefore as this portion`of the assessment is concerned I do not see how it is within the supposed constitutional objection;

*c.* The constitutional objection to the provision in the charter, relative to general paving is, as we understand it, this: that the whole cost of the work done in front of each particular lot is to be ascertained and imposed wholly on that lot; that this has not the essential element of an assessment which implies some proportionate distribution of a burthen common to some given portion of the public.

This seems to have been the view taken by two of the judges of this court in—*Woodbridge v. Detroit, 8 Mich. 274.*

And the validity of such an objection when its exists is approved in—*Cooley's Const. Limit. 501.*

But we venture to submit to the court that such is not the necessary legal effect of the charter provision in question.

The charter as we read it authorizes the assessment of any street to be laid on the lots in front of or adjacent to which the work is done. It may assess this in the way in which a lawful *assessment* may be made. And if an "assessment" *ex vi termini,* implies a proportionate distribution of the cost, this is the method that is to be employed by the council, and the council has "full power and authority to provide it."

Every legislative enactment, when capable of two constructions, one which will uphold it, and the other destroy it, is to receive from the courts the former construction. It is to be presumed that the legislature designed the lawful meaning.—*Cooley's Const. Limit, 184–5: Sears v. Cottrell, 5 Mich., 251.*

We therefore insist that this charter provision is not open to the supposed objection.

The actual method of assessment employed by the city,

conforms to the idea of a lawful assessment as stated above.

The only cause of inequality in the cost is found in the grading. The cost of the other parts of the work are equal upon each foot front. The cost of the grading is distributed equally on the entire frontage of the block.

But even if the provisions of the charter are unconstitutional, it does not follow that the complainants are entitled to this relief.

1. Nearly all of these complainants, by petitions in writing, asked that this paving should be done. They asked the council to cause it to be done. This in effect was asking that it should be done under the authority and in the mode provided in the charter. This goes beyond an ordinary waiver; it treats this authority as not only not objectionable, but beneficial to the parties.—*Cooley's Const. Limit. 181; Lee v. Tillotson, 24 Wend. 337; People v. Murray, 5 Hill, 468; Baker v. Braman, 6 Hill, 47; Heyward v. Mayor, 8 Barb. 486; Wellington v. Petitioners, 16 Pick. 87; Hingham & Q. Turnp. Co. v. County, 6 Allen, 353.*

2. This paving having been done at their request, they are now equitably estopped to say that the common council had no constitutional power to do it. To hold otherwise, would enable the petitioners to perpetuate a gross fraud. It seems to us that the plainest principles of equitable estoppel apply.—*1 Greenl. Ev. § 2; Plumb vs. Cattaraugus Co. Mut. Ins. Co. 18 N. Y. 392; Brown v. Bowen, 30 N. Y. 519; Manuf. & Tr. Bank, 30 N. Y. 226; Young v. Bushnell, 8 Bosw. 1; Mendlebaum v. N. Am. Mg. Co. 4 Mich. 465: Dana v. Cudney, 13 Mich., 239.*

3. Not only did the petitioners ask this work to be done, but they had full knowledge of ·the work in all its stages. They waited till the work was done; till the benefit of it was irrevocably assured to them, and then they ask an injunction to restrain the payment for it. What

color of right have men under such circumstances, to the equitable interference of this court. An injunction is not a matter of right. It will not be granted where it would violate moral equity.

We insist, therefore, that so far as the petitioners are concerned, they have no title to the relief prayed. If they have any *legal* remedies they must be left to them.—*2 Eden. Injunc. 337—note ; Roberts v. Anderson, 2 Johns. Ch. 202 ; Russ v. Wilson, 22 Maine, 207 ; Burney's Case, 2 Bland. 99; Maryland Savings v. Schroeder, 8 Gill and J. 93 ; Carson v. Colman, 3 Stockt. 106.*

For these reasons, it seems to us, that the decree below should be reversed and the bill dismissed.

COOLEY Ch. J.

Fourteen tax payers unite in this case to restrain the collection of an assessment levied upon certain property owned by them, fronting on Grand River street in the city of Detroit, to meet the expense of grading that street and paving it with what is known as the Nicholson Pavement. The grounds upon which the bill asks the interposition of chancery to restrain the municipal action are:

*First.* That the Nicholson pavement is a patent, and the right to lay the same consequently a monopoly, so that there can be no competition for any contract for laying the same, and "no lowest bidder" for any such contract within the meaning of the city charter, which requires all such contracts to be let to the lowest bidder. And the inference the complainants draw is, that any contract for laying the Nicholson Pavement in the city of Detroit is necessarily illegal and void.

*Second.* That the pavement was not constructed according to the provisions of the contract between the city and the parties who had undertaken the construction of the same, in some important particulars.

*Third.* That even if the contract were valid, and fully complied with by the contractors, the assessment would nevertheless be void, because opposed to the constitution of the state, inasmuch as such an assessment can only be levied and enforced under the taxing power of the state, a due and valid exercise of which requires that there should be in every case an apportionment of the burden to be levied, throughout some taxing district, according to some established and uniform rule; whereas, in this case, there was no such apportionment, but each lot owner was arbitrarily charged with the whole expense of the grading and paving in front of his premises, irrespective of the burden upon his neighbors, and in entire disregard of the fundamental principle upon which depends the right to enforce payment of any exaction under the power of taxation.

The first objection taken to the assessment has already been ruled against the complainants in the case of *Hobart v. The City of Detroit (17 Mich., p. 246)* and requires no discussion in the present case.

The second objection rests upon evidence which appears to me weak and unsatisfactory, and such as would not warrant the relief prayed for, even if a court of equity had a right to consider the questions which it presents, and to dispose of the case upon them. But I do not think the court has any such right. It is averred in the bill that the common council accepted and approved the work as performed in accordance with the contract, and it is not charged that any mistake or fraud has intervened. The complainants seek by their bill to have us review the decision of the council upon the facts, and to set aside their conclusion if in our judgment the evidence fails to support it. If the courts can interfere in this way, it is difficult to perceive at what point they are to stop, or what is to prevent their taking upon themselves the whole administrative power in

the municipal governments. But it is plain they have no such authority. So long as the common council keeps within the limits of its jurisdiction, as defined by the constitution and statutes of the state, and its members are guilty of no intentional wrong or corrupt conduct in the discharge of their official duties, the courts have no power to control the exercise of their legal discretion, or to overrule and set aside their judgment; but must accept their conclusions as warranted by the facts, and as binding alike upon the city and upon all of its inhabitants.

The third objection to the assessment is one of very great difficulty and gravity, and we approach it with no little hesitation and reluctance; admonished as we are of the important public and private interests involved, the irreconcilable differences of judicial opinion concerning it, and the impossibility that any rule which may be accepted as sound in respect to assessments for these local improvements, shall operate at all times with entire justice, equality or equity. In two cases preceding the present, the question now before us has been presented and elaborately argued at the bar and by the bench in this court; and if the conclusions of its judges have not been entirely harmonious and satisfactory, the difficulty has not come from want of careful and patient research, investigation and reflection, but is inherent in the question itself.

In Williams v. Mayor, etc. of Detroit, (2 Mich. 560,) a section of the former charter of Detroit was considered, which provided that " the common council shall have full power and authority to provide funds for defraying the expenses of such paving of streets or sidewalks as may be deemed necessary, either by assessment on the owner or occupant of such lot or premises, in front of or adjacent to which such streets or sidewalks may be directed to be paved or repaired, or otherwise as they may direct." It appeared

that under this section the common council had passed an ordinance prov.ding that "whenever the common council of said city shall deem it necessary to provide funds for defraying the expenses of grading, paving or planking, any alley, avenue or street of said city, or any portion thereof, they shall cause an assessment to be made by the city surveyor, on the owners or occupants of the lots or premises in front of, or adjacent to the avenue or street directed to be graded, paved or planked." Acting under these provisions of the charter and ordinance, the common council caused a certain street to be paved, and in order to provide the necessary funds for defraying the expense thereof, caused an assessment to be made on the owners and occupants of the lots and premises fronting on the street, in proportion to the frontage of such lots and premises. Williams, who was one of the lot owners, filed his bill in chancery to restrain the collection of. this assessment, alleging it to be irregular, illegal and unconstitutional. The alleged irregularities and illegalities are not of importance to the present discussion, but the constitutional objections are repeated in the case before us, and demand decision. One of these objections was based upon section eleven of article fourteen of the constitution, which requires the legislature to provide a uniform rule of taxation, and which the court held to be immaterial to the case then at bar, inasmuch as no new rule of taxation had yet been prescribed by the legislature since the constitution took effect, and the constitutional provision was not, the court thought, one which executed itself. It was also objected that the assessment then under consideration was forbidden by section twelve of Article fourteen of the Constitution, which provides that " all assessments hereafter authorized shall be on property at its cash value;" but the word "assessments" in this section, in the opinion of the court, has reference only to the valuation of property for the purposes of taxation, and not to the levying of a tax thereon.

These were the most important objections which were based upon specific provisions of the constitution, but others were pressed with earnestness, and were overruled. It was insisted among other things that the expense of a public work of the nature in question must necessarily be levied upon the whole city, and that smaller taxing districts are not admissible. The court did not accept as sound the reasoning in support of this position, but on the contrary expressed the opinion that there was no inflexible rule by which assessments for local improvements must necessarily be limited to any fixed political divisions, or any definite extent of territory. Townships, the court well remarked, are divided by the commissioners of highways into road districts in their discretion, for the purpose of assessing and applying the highway taxes, and school districts are organized by the school inspectors within a township, and sometimes partly in two or more townships, and assessed accordingly for district purposes; and no constitutional inhibition has been supposed to have been infracted thereby. These divisions for such and analogous purposes tend to promote the convenience of those more directly interested, and thereby subserve the public interest. And upon the fullest consideration the court were of opinion that clauses cited from the constitution for the purpose of showing that it enjoins a just principle of equality in regard to all public burdens, and prescribes a limit to the exercise of the taxing power; that common burdens should be sustained by common contributions, regulated by some fixed rule, and apportioned according to some uniform ratio of equality, did not forbid the mode of assessment and apportionment which had been resorted to in that case. The principle of equality insisted upon was admitted to be sound, but it was not conceded by the court that it had been violated. It would not require that every public highway and bridge, because constructed for the common use of all the citizens of the state, should be sustained by a general tax upon all the

persons or property within the state, or that an entire city should be taxed for the construction or improvement of every street within its limits. Nor would it require that every public highway in the state should be constructed and sustained in the same manner as every other. These views of the court were sustained by numerous and apposite illustrations, but it is not deemed important to repeat them here.

By this decision, it will be perceived, the constitutionality of assessments for local improvements upon the property more immediately benefited, and by a ratio of frontage instead of one of value, was fully affirmed; and this was accepted as the settled law of the state, and acted upon in very many instances thereafter. But the case is now assailed, not only for the conclusion at which the court arrived upon the general principle involved, but also because, as is asserted, the learned judge who delivered the opinion overlooked the history of state and municipal legislation upon the subject, and especially important provisions of the municipal ordinances which must have compelled a different conclusion respecting the validity of the assessment then in question. It is said with truth, that the early statutes empowering the city authorities of Detroit to cause the streets to be improved at the expense of adjoining land owners, contemplated this being done, not by an exercise of the power of taxation, but under and in pursuance of another sovereign power which is governed by very different principles; to wit, the police power of the state. And it is also asserted that some portion of the ordinances of Detroit in force at the time the assessment in question in *Williams v. the Mayor, etc.* was made, plainly forbade such an assessment as was there made, and would have required the court, on principles asserted in the opinion, to hold the assessment void, had they not been altogether overlooked.

Municipal ordinances are not general laws, and cannot be judicially noticed by courts except so far as they are

in proof before them.    We have no means of judicially
knowing that any portion of the ordinances of the city of
Detroit were before the court, in *Williams v. the Mayor,
etc.*, except. what is mentioned in the opinion.    Neither have
we any means of informing ourselves what ordinances were
then in force, except by entering upon an inquiry of fact
extrinsic the present record.    Any such inquiry is for-
eign to our functions as an appellate court, and I must
decline to 'enter upon it.    I shall assume, until the contrary
is proved by the record, that the court in the case referred
to was fully possessed of the facts, and that the only
question now of importance to us is, whether the court
properly applied to those facts the law of the case.

The charter of Detroit was revised in 1857.    By chapter
5, § 22, sub. 11 of the Revised Charter, the common council
are empowered " to establish, open, widen, extend, straighten,
alter, vacate and abolish highways, streets, avenues, lanes,
alleys and public grounds or spaces within said city ; and
to grade, pave, repair and otherwise improve the highways,
streets, avenues, lanes, alleys, interior public spaces, or cre-
ated by the intersection of streets, cross-walks and side-
walks in said city, with stone, wood, brick or other mate-
rial ; and the common council shall have full power and
authority to provide for paying the costs and expenses
thereof by assessment on the owner or premises in front
of or adjacent to which such highways, streets, avenues,
lanes, alleys, interior or public spaces, cross-walks, or side-
walks may be directed to be graded, paved, repaved, or
otherwise improved :   Provided, That the cost of such
grading, paving, repairing or improving such interior or
public spaces, shall be assessed to each block in such pro-
portions as the common council shall deem just and equi-
table :   Provided further, That each block shall only be
assessed to the center of such interior public spaces each
way ; which assessment shall be a lien until paid, on such
lot or premises in front of or adjacent to which such

grading, paving, repairing or improving, may be directed, and shall be collected in the same manner as other assessments or taxes imposed by authority of the common council. Whenever such grading, paving, repairing and improving shall be at the intersection of two or more avenues or streets, and in front of or adjacent to the point of a triangular block, such portion of costs and expenses thereof shall be assessed to and paid by the city of Detroit, as the common council shall deem just."

Section eight, of chapter eight, of the same charter also provides that "The common council shall also have power from time to time to levy, assess, and collect a tax or assessment on all lots, premises or subdivisions thereof, sufficient to defray the expenses of grading and paving, graveling, macadamizing or planking any highway, avenue, street, lane, alley, or crosswalk in said city, in front of or adjacent to such lots, premises or subdivisions thereof, and of putting curb stones and culverts therein; which tax or assessment shall be credited to the street paving fund: Provided, however, that such tax or assessment shall not in any one year exceed in the aggregate the sum of $50,000: such grading, paving, macadamizing, planking and putting in of curb stones, shall be commenced and completed, and all contracts therefor shall require the same to be commenced and completed within the seven months next preceding the first day of December."

With these provisions of the charter in force the common council, in 1859, passed an ordinance directing the grading and paving of a certain portion of Fort Street, and also directing the collection of the expense thereof from the owners of the abutting premises, upon no other principle of apportionment than that each lot owner should be charged with the whole expense of the improvement in front of his premises. The common council assumed that the provisions I have quoted warranted and required the adoption of this mode of imposing and collecting the ex-

18 MICH.—I⁹

pense; but Mr. Woodbridge, upon whom the burden mainly fell, assailed it as unwarranted and unconstitutional, and the result was the injunction suit of *Woodbridge v. Detroit* which, as passed upon in this court, is reported in *8 Mich. Rep. 274,* and in which the whole system of local assessments for local improvements was carefully investigated, both on principle and on authority.

By the report of the case of *Woodbridge v. Detroit* we discover:

*First:* That a majority of the court were of opinion that the provisions of Sections 11 and 12 of Article 14 of the Constitution, which are relied upon in this case as requiring a uniform rule of taxation, and an assessment upon property at its cash value in these cases, have no application to taxes or assessments for such local improvements as the one now in question.

*Second:* That a majority of the court were also of opinion that it was not unconstitutional to assess the expense of local improvements upon the adjacent property, upon some other basis than that of valuation, provided the principle of apportionment which lies at the foundation of the taxing power, was recognized in the assessment. In this particular, the case is in accord with the previous case of *Williams v. the Mayor,* etc., and the opinions delivered lead us to the conclusion that had the assessment in the last case been made on the same principle as the one in the case of *Williams,* and under similar state and municipal legislation, it would have been sustained as constitutional.

In two successive cases, therefore — the last disposed of after there had been an entire change in its members, with a single exception — it has been decided by this court that local assessments for local improvements without regard to valuation, are admissible under the constitution. A due respect to our predecessors, I think, and to uniformity and stability in judicial action, demand that we shall recognize

this point as no longer open to controversy. All the arguments pressed upon us with so much earnestness by counsel, to convince us of the injustice of the system, and all the illustrations of the hardship of particular cases, may be addressed with much force to the legislative department, but addressed to us they are appeals alike against the judgment of the legislature in point of policy, and against the judgment of our predecessors in point of constitutional law; and we cannot suffer them to have weight without disregarding principles which have become axiomatic. The hardship of particular cases is no constitutional objection to any system of taxation; and if it were, it would be easy to defeat the best arranged scheme which human ingenuity has yet devised. And the importance of adhering to judicial decisions, except when unmistakably wrong and mischievous, can certainly require no illustration at our hands.

In the *Woodbridge* case, it was assumed by counsel and by the court that the provisions of the revised charter of Detroit which I have quoted would, if constitutional, have justified the common council in the ordinance then in question. My brothers, Christiancy and Campbell, however, held that the system of assessment — if such it can be called—which was there adopted, was unconstitutionaland void, inasmuch as it imposed the burden in a manner which disregarded the fundamental principles of taxation; and without any apportionment whatever compelled every lot owner, according to a standard fixed, and at an expense assessed by the public authorities, to put the street in front of his premises in condition for public use. I agree fully with those judges, that there is nothing in the principles of taxation which will warrant this course. I also agree with them that these local assessments for the improvement of streets are made in the exercise of the power of taxation, and cannot be justified on the ground of being mere regulations of police; and that consequently those cases in which have been sustained police regulations, compelling

each lot owner to improve and keep in repair the sidewalks
in front of his premises, without reference to any taxing
district, or any apportionment of the burden, are no au-
thority for an ordinance like that in question in the
*Woodbridge* case.

After the *Woodbridge* case was decided, the common
council appear to have shaped their action with some ref-
erence to avoiding the difficulty suggested by the opinions
of the two judges referred to. Assuming that the provisions
of the charter, which I have quoted, did not require, though
they might by their terms, if valid, permit the common
council to impose upon each lot owner the expense of the
improvement in front of his premises, irrespective of any
taxing district, or any apportionment of the expense of
the improvement, and that the council, under those
provisions, were at liberty to establish taxing districts for
these improvements, and adopt some system of apportion-
ment in assessing the expense upon the abutting lots, they
have since, we are informed, levied these local assessments
according to the principle approved in the case of Williams,
and they claim that the one now in question, is justified by
that case, and by the cases relied upon by the court in
deciding it.

It is somewhat remarkable that the city authorities, after
being notified as they were by the *Woodbridge* case that in
the opinion of the judges, as well as of the counsel em-
ployed on both sides, the city charter laid down an absolute
and arbitrary rule for defraying the expense of improving
the streets under which there could be no apportionment,
and that one-half of the court regarded such rule as uncon-
stitutional and void, and after having themselves abandoned
all attempt to enforce it further, and fallen back upon a
system which had been previously sustained by the court,
should nevertheless have failed to procure the proper amend-
ments to their charter, and should have gone on for a

series of years levying and collecting assessments on one system, under a statute which was conceded in the previous litigation to establish a different one.    It would seem that the doubtful validity of their action must have been constantly present to th ir minds, and it can hardly be doubted that a simple request to the legislature to change the statute to correspond to the system they had finally settled upon would have secured such legislation as to render the validity of these assessments unquestionable.    It is always a source of regret when a court is compelled to hold municipal action invalid on technical grounds, where the action itself has wronged no one, and where the imperfection consists only in a failure to procure at the outset the proper authorization, which would have been given if asked for.    It is much more agreeable to affirm the doings of municipal authorities where they have acted in good faith, than it is to annul them for imperfections; but cases, unfortunately, will sometimes occur where the court has no alternative.

It will not be denied that a valid assessment by municipal authorities requires a valid statutory provision to warrant it; and if the provisions of the city charter under which this assessment has been made will not justify any such assessment, but require a different mode of imposing the burden, the city authorities have not escaped the difficulty which was made apparent in the *Woodbridge* case, by adopting a basis of taxation which the legislature might constitutionally have sanctioned, but have not.    The counsel for the city in the present case concede this position, but they insist that the provisions of the city charter which were considered by the court in the case of *Woodbridge*, and under which the present assessment has been made, were incorrectly construed in that case, and that they do not, as was then assumed on all sides, require that each lot shall be considered by itself, and that the expense of improving the street in front of it shall be imposed upon the owner.  On the contrary, they claim that those charter

provisions only establish a general principle that the expense of these local improvements shall be assessed upon the abutting or adjacent property, while they leave the city authorities at liberty to adopt any such system of assessment and apportionment within this principle as will consist with the general ideas which underlie the taxing power.   And they also insist that upon this question of construction the case of *Woodbridge* cannot be regarded as a precedent, inasmuch as it was not there discussed, and the conclusions of the judges must have been the same in that case whether the construction there conceded to be the true one was adopted, or on the other hand, the one insisted upon by the city in the present case.

If this question were entirely a new one, I am very much inclined to think that the view now taken by the city authorities ought to be adopted, on the familiar principle that where two different constructions of a statute are possible—the one of which is consistent with the constitution, and would render the legislative act valid, and the other is inconsistent with that instrument, and would render the act nugatory—the one first mentioned is to be preferred as the one presumptively intended by the legislature.   (*Dow v. Norris, 4, N. H. 17; Newland v. Marsh, 19 Ill., 384.*)  But my brethren who participated in the decision of the *Woodbridge* case have since seen no reason to change the view they then took of the charter provisions in question, and it is impossible to deny that that view is one which very naturally presents itself to the mind on reading those provisions.   It is impossible, therefore, to sustain the assessments now in question before us, and with some hesitation, I concur with my brethren in their construction of the statutory provisions.

These conclusions render it unnecessary to determine whether the assessment is in all respects regular, and such as could have been sustained had the charter been construed by the court, as it was by the common council; and

I do not propose to discuss that question. It may not be inappropriate to suggest, however, inasmuch as the common council have now procured an amendment to their charter, under which it is to be presumed that new assessments will be made, that the forms which are adapted to such a proceeding as was had in the case of *Woodbridge* are at least inappropriate to such an one as is claimed to have been made in the present case, and that a proper and orderly course of proceeding would require the council, by preliminary legislative action, to establish the taxing districts, instead of leaving that to the surveyor and relying upon the resolution approving his assessments as establishing them. I do not, however, say or intend to intimate that the present assessment would have been void on either of these grounds, nor that there would be any valid objection to it on constitutional grounds, because of there being, in terms, no apportionment of the expense of the paving tax. The expense of the paving—unlike that of the grading—was uniform throughout the districts, and a mathematical calculation to apportion it would have reached precisely the same result as that adopted by the Surveyor without such calculation, when he charged upon each lot the expense of paving in front of it. Constitutional principles for the protection of person and property are not based upon nice distinctions in the modes of administration, but they regard the substance of things rather than the form. We have had occasion heretofore to declare that a thing unconstitutional in its essence was not to be sustained simply because it had assumed a constitutional guise; *Price v. Hopkin, 13 Mich. 318 ; Groesbeck v. Seeley, Ibid. 329 ;* and on like reasons we should not be likely to declare an assessment which was proper in substance to be unconstitutional, because an unnecessary mathematical calculation had not been gone through with to reach a result which was already possessed before the calculation was begun.

MOTZ ET AL *v*. THE CITY OF DETROIT ET AL.

It appears from the record that the complainants Frederick Motz, Thomas Cranage, Peter Yost, Jenison F. Glazier, Joseph Carnes, Andrew Peoples, James S. Peters and Charles Fitzsimons, before any contract had been entered into by the city for the grading and paving of Grand River street, or any action taken in reference thereto, joined with other property owners upon the street in a petition to the common council that that body would cause the street to be paved. It was in compliance with that petition that the improvement was ordered; the contractors knew of it, and may be supposed to have placed some reliance upon it while the work was progressing; and inasmuch as no objection appears to have been made by any of the petitioners to the contract made, or to any of the action of the contractors, or of the common council until the work was completed, the contractors had reason to believe they were engaged in the fulfillment of the wishes of the petitioners, and might rely upon their making payment without question when the contract was performed. Both the contractors and the petitioners—all of whom are residents of the city—knew that, by the city charter, the city was not and could not be made liable for the cost of the work, but that the contractors must rely upon the special assessment exclusively. There is no claim now on the part of these petitioners that the assessment of the expense of the improvement is made on any different basis from that contemplated by them when the petition was signed. Under these circumstances they must be taken to have been willing and actively consenting parties to all the proceedings which led to the assessment, and to have impliedly, at least, consented that such an assessment should be made. Whether, therefore, the assessment is legally valid or not, there is not the least ground on their part for claiming the interposition of a court of equity by its extraordinary process of injunction to stay the collection of the assessment. Their remedy, if any, is strictly legal,

and the decree of the court below as to them, should be reversed, and the bill dismissed with costs of both courts. This conclusion in no degree infringes what the complainants insist is their sacred constitutional right of petition, but it precludes their resort to equitable remedies for relief when the only wrong they allege is that their petition has been complied with.

The other complainants are entitled to an affirmance of the decree so far as it enjoins the collection of the expense of grading and paving in front of their respective premises. The decree went further, however, and enjoined the collection of the expense of grading and paving the several interior spaces. In this particular it appears to be erroneous. There is no specific complaint in the bill that the grading and paving of these spaces was not done in conformity with the constitution and the provisions of the city charter, except so far as the allegation that this species of pavement was a monopoly, and that the work was not done in compliance with the contract, may have a bearing in that direction. There is therefore, perhaps, no occasion for our considering the question of the validity of the assessments for this work on any other grounds. It is evident, however, that the charter, together with the ordinances, in respect to the cross walks and these interior spaces, does establish taxing districts, and their provisions on that subject are not liable to constitutional objections under the views hereinbefore set forth. The decree, therefore, so far as it enjoined the collection of the assessments for the grading and paving of the interior spaces is erroneous, and should be reversed. As each party succeeds, in part, no costs should be awarded to or against these complainants, except as above directed.

GRAVES J., concurred.

CAMPBELL J.

The principal questions in this case relate to the validity

of the mode of assessment for paving streets, provided for by the charter and ordinances of the city of Detroit, and to deviations from the appointed method which are alleged to have occurred.

As under the laws in question assessments are declared to be liens upon land, and are to be enforced by sale of the land, they must be made in strict conformity with the laws and ordinances in order to have any validity whatever. And if not so made the common council could not make them valid. This was the view expressed by Judge *Green*, in *Williams v. Mayor of Detroit*, 2 *Mich.* R. *575*, where he says : " It is contended by the defendant's counsel, that, although the provisions of the ordinances are not complied with, yet, if the common council by resolution ratify the proceeding, such resolution has the power and effect of an ordinance or by-law, and repeals or modifies *pro tanto* the ordinance which has been violated or disregarded. This latter assumption is wholly inadmissible as applied to those ordinances which affect the substantial rights of individuals. The common council, in making general ordinances, exercise a legislative power. The making of an assessment roll, and apportioning a tax under the ordinances, is a ministerial duty, and the confirmation of the assessment partakes more of the character of a judicial than a legislative act. We must, therefore, regard the ordinances relating to assessments, as binding and obligatory upon the corporation as upon the individual citizens."

This not only negatives the validity of the supposed ratification by the common council of the illegal assessments in the present case, but it also indicates with equal clearness, that if the court in that case had compared the by-laws under which the assessment there had been made (and which are referred to, but under an error in the opinion), the proceedings could not have been maintained on any hypothesis. It will become necessary to refer to the several charters and ordinances which have been before this court in the several

cases heretofore considered, in order to see the precise con-
dition of the law. And it is very much to be regretted
that they were not collated on the argument of those cases.
In the *Woodbridge* case the construction which had been
given to the charter since the organization of the city was
very naturally conceded by every one to be true; but if it
had then been contested, its correctness would I think have
been made manifest, and we should have been saved the
trouble of considering the present controversy.

A careful examination of the statutes on the subject of
street paving will show that there has been no change in
the phraseology of so much of the charter as provides spe-
cifically how the expense of paving is to be charged, since
the first charter of 1827. It will show also that during this
entire period (except for an interval when sidewalks were
not authorized to be built by assessment unless in-
cluded in the term "streets"), the pavement of streets
and sidewalks has been provided for by the same identical
means, and that in every case the law and the ordinances
have charged each lot separately for all work done in front
of it, and have expressly excluded any idea of apportion-
ment except for cross-walks and public spaces. There is
not in either law or ordinance any reference or allusion to
assessment by feet frontage as a measure of proportion,
but it is the lot, small or great, which pays its own paving,
without any reference to its neighbors. And if there should
appear any room for ambiguity, when a single clause is
read by itself, it ceases when all are examined together.

The power to assess for paving first appears in section
20, of the charter of 1827, in these words: "The common
council shall have full power and authority to provide funds
for defraying the expenses of such paving of streets or side-
walks as may be deemed necessary, either by assessment on
the owner or occupant of such lot or premises, in front of,
or adjacent to which such streets or sidewalks may be di-

rected to be paved or repaired, or otherwise as they may direct." The words " or otherwise" were stricken out in 1855.

Before proceeding further it will be noted that the streets and sidewalks are to be paved upon the same principle. It will also be perceived that the assessment is not spoken of as one to be apportioned among the owners or occupants of the several lots which may be on the line of the improve- ment, but the owner and the lot are in the singular num- ber, and the assessment is individual and not distributive. As already intimated, this alone would not be conclusive, but it is made so by other considerations. But it is clear from this section alone that no assessment would be valid for a sidewalk under this law which would not be valid for a street. And sidewalks have, whether rightly or not, always been held within the police power, without reference to taxation.

It will be observed that these assessments were per- sonal, and did not bind the land. It does not appear that any compulsory street paving was ever done under this clause alone. But in 1841 the subject seems to have become more prominent, and the law was amended by making these assessments liens upon the land. *L. 1841. p. 201.* The same statute authorized the common coun- cil to permit any person or persons to pave the sidewalk and street in front of the premises owned or occupied by such person or persons, and provided that when done, they should not be "assessed or compelled to pay any road or highway tax on the premises in front of which such pavements shall have been made," so long as they should keep the same in repair to the satisfaction of the common council. — *L. 1841, p. 199.*

This, when taken with the other provision, shows that it was intended to make each lot owner pave both street and sidewalk in front of his own premises, and

keep both in repair when so paved. The effect of this would be to make no provision for such portion of the street as was not in front of any lot — or, in other words, the crossings. These could only be provided for under the general "or otherwise" clause. It will be seen that in making their ordinances the council gave at once a practical construction which has never been changed, and which, immediately after this court failed to decide the *Woodbridge* case, was renewed and reiterated precisely as before. These ordinances were the ones in force when the case of *Williams v. The Mayor* was decided, and the court seems entirely to have misapprehended the argument of irregularity which was based upon them.

The ordinance there quoted (on page 568), was section 16, chapter 17, of the revised ordinances of 1848, which ordains that "whenever the common council of said city shall deem it necessary to provide funds necessary for defraying the expenses of paving or planking any avenue or street of said city, or any portions thereof, they shall cause an assessment to be made by the city surveyor on the owners or occupants of the lots or premises in front of or adjacent to the avenue or street directed to be paved or planked." Section 17 provided that the expense of paving the cross streets should be apportioned so that each block should be assessed to the center of the cross street each way. This section has been substantially perpetuated in the present charter.

The court, assuming that section 16 was the only section bearing upon the other assessment, held that any reasonable assessment made by the surveyor and accepted and approved by the council, would be conclusive. But, as already seen, they held further, that if there had been any ordinance directing how this assessment should have been made, it would have been necessary to follow it.

The very next section, (section 18,) which was over-

looked, provides that "the manner of making said assessments and all other proceedings in the premises, shall be the same as are required under the provisions of sections 6, 7 and 9 of this chapter, except that the notice to be given by the city clerk, under the provisions of section seven, shall notify persons to be assessed that they are about to be assessed to defray the expenses of paving or planking the street or streets adjacent to certain premises owned or occupied by them," etc.

Section 19 provides that, "If the owners or occupants shall omit to pave or plank said avenues or streets in front of, or adjacent to their respective lots or premises, or pay their proportion of the assessment for paving or planking any cross street or avenue," a warrant may issue for its collection. This is the sole authority to collect.

Here the distinction is made between the paving which belongs to the lot absolutely, and that which is proportioned, and which relates only to public spaces. A reference to the sections 6, 7 and 9, which contain the directions for assessing, will make this still plainer.

Section 6 directs that in making out the assessment roll, the list shall be made "describing by itself, with sufficient accuracy, each lot or portion of a lot owned by any one person, or company of persons, and also the names of such owner or several owners." It then provides that "said City Surveyor, shall also, in as accurate a manner as possible, ascertain and, in said report, set forth the space or number of square yards or feet paved or planked, or to be paved or planked, and the quantity of curbing placed or to be placed in front of or adjacent to the lots or premises owned or occupied by any one person or set of persons, the sum of money which such person or set of persons shall be assessed at, and pay for such paving or planking; which report the said City Surveyor shall present to said common council." Sections 7 and 9 relate to the notices and proceedings for confirmation.

Section 24 imposes the liability to repair all paved streets and sidewalks on the "owner or occupant of the lot or premises in front of or adjacent to such parts of said street or sidewalk as require repairing," and subjects him to an assessment for the expense if he omits it.

These provisions are susceptible of only one construction, and that is, that for street as well as sidewalk paving each lot is separately liable for the work done in front of it; and had they been brought to the attention of the court in the *Williams* case, the reasoning and rules adopted in the opinion show the conclusion arrived at on the law points would have been different.

In that case there was some reference to the subject of grading, but the court did not pass upon it, as there was a dispute of facts. The common council, however, soon after legislated on the subject, by including, by express terms, the expenses of grading with paving, whenever streets were to be improved, instead of leaving the question open to misapprehension. The revised ordinances of 1855 made this change by the insertion of the proper words, and amended section 19, before quoted, so that the first portion of it reads as follows: "If the owners or occupants shall omit to grade, pave or plank said avenues or streets, in front of or adjacent to their respective lots or premises, or pay their proportion of the assessment for grading, paving or planking any cross street, avenue or alleys, so that the expense of all grading done shall be assessed upon the property fronting the same, within such time as the common council may, by resolution, direct, then the said common council may issue their warrant," etc. — *Charter and Ord. 1855, p. 139.*

This was the state of things when the paving in Gov. Woodbridge's case was ordered and made, and I think there is no room for questioning the correctness of the construction put on the laws and ordinances in that case by the court.

When that case was decided, the ordinances continued in force, but the present charter had superseded the old one. By chapter 11, section 8, of this revised charter, which was prepared by the city authorities and adopted at their request by the legislature, it was declared that "All ordinances, by-laws, regulations, resolutions and rules of the common council of the city of Detroit, now in force, and not inconsistent with this act, shall remain in force until altered, amended, or repealed by the common council, under this act, and after the same shall take effect."

At that time, therefore, these ordinances themselves received all the sanction of laws, so long as they should remain unaltered, and required no re-enactment.

This new charter only differed from the charter of 1827, so far as the points now under consideration are concerned, by omitting the words, "or otherwise," and by including in terms the grading with the paving, and other expenses which were to be chargeable on each lot. The provision for cross streets and public spaces was continued as before, with the same amendment to cover grading. *Chapter 5, sec. 22, subd'n 11.* It also retained the exemption of each lot owner from street taxation, so long as he should keep the pavement in front of his premises in repair. ( *Subd. 18.*) By a singular oversight, no provision was made for compelling the building of sidewalks, or levying assessments for that purpose, unless they could be included in the provisions for street paving. Owners might be permitted to build them, (*Subd. 18*) but could not be compelled, unless they came within subdivision 11, which seems to have been regarded as covering them, and which in building walks was still, as formerly, followed in the by-laws and ordinances for that purpose. An entirely new provision was made in 1865 ( *L. 1865, p. 679.*)

In August, 1860, a few months after the *Woodbridge* case was before this court, the common council amended and consolidated the former ordinances concerning sidewalk and

street paving, and in doing so, followed the views of *Manning J.* and retained all the distinctive features of the old system. *Chapter 28, section 18*, in directing how the assessment shall be made, requires the roll to describe "by itself, with sufficient accuracy, each lot or portion of a lot owned by any one person or company of persons" and to set forth, in separate columns, the space or number of yards or feet graded or to be graded, the space or number of square yards or feet paved or to be paved, the quantity of curbing placed or to be placed, and the quantity of tile drains placed or to be placed in front of or adjacent to the lots or premises owned by any one person or set of persons, the sum of money which such person or set of persons shall be assessed for said work, and also five cents for each description to defray the expense of making such assessment." The same section requires the surveyor to make a "separate assessment" upon one quarter of each block for the public spaces, &c. to be laid by superficial area. These rolls are referred to as separate rolls, and are made upon a different basis. *Sec. 17, p. 66-7; Rev. Ord. 1863.* Whether they can be combined properly is worthy of some consideration, but is not material in my view of the case.

The assessment rolls now before us purport by their heading to set forth the amount of paving, grading, curbing, drains, &c. in front of each lot. The report and certificate of the surveyor attached, declares them to have been made in accordance with the ordinance. Even if the council could, without an ordinance, vary the mode of assessment, and even if the charter did not require this method, the approval of rolls in this form, and thus certified, cannot be construed as an approval of something different. These proceedings cannot rest in parol, and if the surveyor did in fact vary from the ordinance, he did so without authority, and has not so reported. The rolls certify otherwise.

I have been unable to discover anything to authorize

18 MICH.—K[10]

any different construction of the charter from that given in the *Woodbridge* case, and the ordinances are equally explicit. If that construction is correct, then the proceedings in this case, were all within the mischiefs referred to there, and I adhere to the views I then expressed, that they lack the elements of legitimate taxation.

There are difficulties which, so far as my individual opinion is concerned, would not be removed by a mere linear or superficial apportionment, not regulated · by some less vague principle than that contemplated by the argument on which the defence is based. I shall indicate them as briefly as I can, without attempting to go into any extended discussion.

I have never been able to comprehend why the constitutional clause declaring that all assessments shall be on property at its cash value is not applicable, as it certainly is · in terms, to these taxes. The equalization by the state board only affects the relative quotas of counties, so as to adjust their taxation for state purposes. It has nothing to do with particular assessments, and there is nothing in the constitution which prevents new and separate assessments for every separate purpose. Uniformity is required in the distribution of each tax, but the city or the village could have independent rolls for municipal purposes without violating any rule. The highways in existence when the constitution was framed greatly outnumbered the city streets, while there were not in this city any continuous street pavements, and probably there did not exist a dozen blocks of paved streets in the whole state. If local assessments had been made elsewhere on other than pecuniary assessments, it is nevertheless true that there has never been a time when more complaints were made concerning their injustice, and there was no general acquiescence in their legality. On the other hand, state, county, town and village roads had always been made and kept up by assess-

ments or taxes levied on the basis of the ordinary rolls, and collected in districts varying in size from the county to the smallest road districts, which could be made as large or as small as might be desired. There was no inveterate custom to interfere with. All unpaved streets in the city are graded as well as repaired and kept in order under this very charter now by taxes raised on the valuation. Bridges are built on the same basis. Pavements are repaired everywhere, and are built in front of city property, sewers are constructed, streets are opened, and all manner of buildings erected by such taxes. There is, therefore, no incongruity in the theory, and no one has been able to discover any better means of equalizing burdens within either large or small districts, while such monstrous inequalities as render the other system in many cases not only oppressive but destructive, could never arise under this. Nothing can approach so nearly to absolute uniformity; and I feel convinced that the construction which seems to be regarded as sanctioned by judicial opinions, if not by settled decisions, might better have been otherwise.

But assuming this to be fixed, and that some other rule than valuation is to be followed, it must, at least, be a rule which makes the same work cost no more to one person than to another similarly situated. Where no district has been laid out in advance, then it seems to me that every work embodied in a single line and built under one contract, must be regarded as an entirety, and its cost assigned to some adjacent and reasonably regular space; and if frontage or any other basis is adopted, the cost of the entire work should be spread along the entire line equally No amount of argument can give plausibility to the claim that two adjoining lot owners should pay different shares of paving tax because one end of a block is crossed by a narrow street and one by a wide one, and still less that lots opposite each other should do so merely because op-

posite blocks may be of very different lengths. Nor is there any possible uniformity in a rule which requires a part of the expense of paving a street to be charged by frontage and another part by superficial area, simply because the work is not all in front of private property. The rule of taxing by frontage without reference to depth is purely arbitrary, for it makes the tax depend entirely on ownership and not on the position of the property taxed. But when this is mixed up with a tax by area depending upon the size and shape of blocks, and the number of cross streets, and differing in every block along the line, it becomes so utterly irregular that there is no uniformity or proportion in it.

I am therefore of opinion that the assessments are not sustainable on any principle whatever. And I do not deem it important to examine into the minor questions of informality.

CHRISTIANCY J.

I concur with my brother Campbell, in the construction of the charter, and his review of the course of legislation, and of the ordinances of the city; and with him I am also of the opinion that if the ordinances in force at the time the taxes referred to in *Williams v. the Mayor*, wére assessed, had been fully brought to the attention of the court, and properly considered, the conclusion arrived at in that case must have been different.

In all other respects I concur in the opinion of the Chief Justice.